[Cite as *Chiquita Brands Int'l., Inc. v. Nat'l. Union Fire Ins. Co. of Pittsburgh Pa*, 2015-Ohio-5477.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CHIQUITA BRANDS INTERNATIONAL, INC., | : | APPEAL NO. C-140492 |
| | | TRIAL NO. A-0808934 |
| | : | |
| Plaintiff-Appellant, | | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH PA, | : | |
| | | |
| Defendant-Appellee. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 30, 2015

*Jones Day* and *Yvette McGee Brown, Taft Stettinius & Hollister, LLP* and *W. Stuart Dornette*, and *Covington & Burlington LLP, William P. Skinner* and *Mark Mosier*, for Plaintiff-Appellant,

*Sedgwick, LLP, Agelo L. Reppas* and *Traci M. Ribeiro, Reminger* and *Joseph W. Borchelt* for Defendant-Appellee.

Please note:  this case has been removed from the accelerated calendar.

SYLVIA SIEVE HENDON, Presiding Judge.

{¶1} Plaintiff-appellant Chiquita Brands International, Inc., ("Chiquita") appeals the trial court's judgment holding that National Union Fire Insurance Company of Pittsburgh, PA, ("National Union") was entitled to recoup $11,744,014.87 in defense costs that it had paid to Chiquita, plus $1,247,042.79 in prejudgment interest. We affirm.

## Facts

{¶2} This case originates from an insurance dispute between Chiquita and National Union. National Union had insured Chiquita under a series of one-year policies from July 1992 to July 2000 ("the policies"). Numerous tort claims were filed against Chiquita essentially alleging that the plaintiffs had been injured by Chiquita's financing of terrorist groups in Colombia from 1989 through 2004. National Union did not initially defend these claims ("the underlying lawsuits"). Chiquita and National Union subsequently both moved the trial court for a declaratory judgment concerning National Union's duty to defend. On January 20, 2010, the trial court journalized an order declaring that National Union owed Chiquita a duty to defend. After the court's ruling, National Union began funding the defense. Each defense cost payment, except one, was accompanied by a letter stating, in pertinent part, that National Union was reserving a right to seek reimbursement of the payments. Because of the procedural posture of this case, a final appealable order was not entered by the trial court until December 16, 2011. National Union thereafter appealed the court's declaratory judgment order.

{¶3} We reversed the trial court's decision in *Chiquita Brands Internatl. Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh PA*, 1st Dist. Hamilton No. C-120019, 2013-Ohio-759. ("*Chiquita I*"). In *Chiquita I,* we determined that National Union did not have a duty to defend Chiquita in the underlying lawsuits because the suits did not allege conduct that

constituted an "occurrence" in the "coverage territory" as defined by the policies. *Chiquita I* at ¶ 29. Meanwhile, National Union had made 16 defense-cost payments to Chiquita and had also made one interest payment. In *Chiquita I*, we remanded the cause to the trial court to determine whether National Union was entitled to recoup these payments. National Union's policies with Chiquita are silent on the issue of recoupment of costs in the event of a judicial determination that it had no duty to defend a claim.

{¶4} On remand, National Union moved the trial court for restitution or, in the alternative, for reimbursement of defense costs. The trial court determined that National Union was entitled to recoup the payments based on an implied-in-fact contractual right to reimbursement created by the cover letters that had accompanied National Union's payments to Chiquita. The trial court also concluded that National Union was entitled to restitution of all payments as the prevailing party on appeal.

{¶5} In its first assignment of error, Chiquita argues that neither of these grounds has merit and that "recent developments" require this court to hold that National Union does, indeed, have a duty to defend Chiquita in the underlying lawsuits.

## I. Res Judicata

{¶6} Before addressing the merits of the trial court's decision, we dispose of Chiquita's argument that this court should hold that National Union has a duty to defend Chiquita in the underlying lawsuits. It is well-settled that, under the doctrine of res judicata, a valid, final judgment rendered on the merits by a court of competent jurisdiction is a complete bar to any subsequent action on the same claim between the same parties. *Brooks v. Kelly*, ____Ohio St.3d____, 2015-Ohio-2805, ____N.E.3d ____, ¶ 7; *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995), syllabus. We have already determined that no duty exists. We therefore will not revisit this issue.

3

## II. Restitution is the Appropriate Remedy

{¶7} Chiquita next argues that the trial court erred by holding that National Union was entitled to recoup defense costs on the ground that an implied-in-fact contract was created through the letters that had accompanied National Union's defense-cost payments. To establish the existence of an implied-in-fact contract, "the proponent must prove that an agreement, based on a meeting of the minds of the parties and on mutual assent, existed, to which the parties intended to be bound." *Lucas v. Costantini*, 13 Ohio App.3d 367, 368, 469 N.E.2d 927 (12th Dist.1983), citing *Columbus, Hocking Valley & Toledo Ry. Co. v. Gaffney*, 65 Ohio St. 104 (1901), 61 N.E.152; *see Stepp v. Freeman*, 119 Ohio App.3d 68, 694 N.E.2d 510 (2d. Dist.1997). Based on the record before us, we cannot conclude that Chiquita ever agreed that National Union should be entitled to recoupment of defense costs in the event that a court determined that National Union had no duty to defend. Chiquita has consistently maintained that National Union had a duty to defend the underlying lawsuits. Its acceptance of defense-cost payments was clearly premised on its position that the payments were due under the terms of the policies, and not on an "acceptance" of the terms contained in National Union's accompanying letters. But we affirm the trial court's judgment because we find that, under the particular facts of this case, National Union is entitled to restitution.

{¶8} Chiquita correctly points out that the policies were silent as to reimbursement of defense costs upon a judicial determination that there was no duty to defend. But we believe National Union is entitled to recover under a restitution theory. Restitution is appropriate where one party to a contract demands from the other a performance that is not in fact due by the terms of that contract under circumstances where it is reasonable to accede to that demand, and where the party on whom the demand is made renders such performance under a reservation of rights, thereby preserving a claim in restitution to

recover the value of the benefit conferred in excess of the recipient's contractual entitlement. 1 Restatement of the Law 3d, Restitution and Unjust Enrichment, Section 35 (2011). Restitution under these circumstances does not require that the contract be set aside; rather, it is a means to enforce adherence to a contract through ordering repayment of a sum to which the recipient was never entitled under the contract's terms. *Id.* at comment a, citing Palmer, *Law of Restitution*, Section 14.1 (1978); s*ee Motorists Mut. Ins. Co. v. Trainor*, 33 Ohio St.2d 41, 45, 294 N.E.2d 874 (1973) (holding that an insurer may defend an action pursuant to a unilateral reservation of rights concerning any potential policy defenses provided it gives notice to the insured).

### A. The Duty to Defend

{¶9} The question we must first address is whether "performance"—in this case payment of defense costs—was ever due under the policies.

{¶10} An insurance policy is a contract, and the rights and responsibilities of the parties are set forth in the policies. *Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St.3d 107, 109, 472 N.E.2d 1061 (1984). Interpretation of an insurance policy presents a question of law that we review de novo. *State Farm Fire and Cas. Co. v. Condon*, 163 Ohio App.3d 584, 2005-Ohio-5208, 839 N.E.2d 464, ¶ 18 (1st Dist.).

{¶11} Chiquita contends that National Union had a contractual duty to defend the underlying lawsuits that was extinguished only after this court's decision in *Chiquita I.* We are unpersuaded by this argument. All of National Union's policies with Chiquita included language that it had a "right and duty to defend" claims against Chiquita. Where an insurance policy includes a duty to defend, the insurer is obligated to defend any claim that even potentially or arguably falls within the scope of coverage. *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 459 N.E.2d 555 (1984), syllabus. Where a claim

potentially or arguably falls within the scope of coverage, the duty to defend is not determined by the action's ultimate outcome or the insurer's ultimate liability. *Trainor* at paragraph two of the syllabus. Thus, an insurer may have a duty to defend even if the insurer is not ultimately liable on the underlying claim. *See W. Lyman Case & Co. v. Natl. City Corp.*, 76 Ohio St.3d 345, 347, 667 N.E.2d 978 (1996); *Socony-Vacuum Oil Co. v. Continental Cas. Co.*, 144 Ohio St. 382, 59 N.E.2d 199 (1945), paragraph one of the syllabus. The "right and duty" to defend benefits both the insurer and the insured. The insured receives a defense. The insurer has control over the defense and is in a position to mitigate its potential losses. And by defending even arguably covered claims, an insurer may avoid a subsequent claim of bad faith.

{¶12} This broad duty to defend is not unlimited, however. "It is axiomatic that an insurance company is under no obligation to its insured, or to others harmed by the actions of an insured, unless the conduct alleged of the insured falls within the coverage of the policy." *Gearing v. Nationwide Ins. Co.*, 76 Ohio St.3d 34, 35, 665 N.E.2d 1115 (1996). Consequently, where the conduct alleged in a claim is indisputably not covered by a policy, there is no duty to defend. *See Allstate Ins. Co. v. Campbell*, 128 Ohio St.3d 186, 2010-Ohio-6312, 942 N.E.2d 1090; *Wedge Prod. Inc. v. Hartford Equity Sales Co.*, 31 Ohio St.3d 65, 509 N.E.2d 74 (1987). Defense of an indisputably uncovered claim goes beyond what the parties to an insurance policy had bargained for—the insurer never agreed to pay defense costs for claims that were not even potentially covered, and the insured never paid premiums for this service.

{¶13} In *Chiquita I*, we held that the underlying lawsuits involved intentional conduct not covered by the terms of the policies, and that the injuries complained of did not take place within the United States, Canada or Puerto Rico, the policies' "coverage territory." *Chiquita I* at ¶ 20, 29. The claims in the underlying lawsuits therefore

indisputably fell outside of the policies' coverage, and National Union was never under a duty to defend. In other words, National Union was never under a contractual obligation to fund Chiquita's defense.

### B. Chiquita Demanded Performance and it was Reasonable to Accede

{¶14} The next issues we address are whether Chiquita demanded performance under the policies, and whether it was reasonable for National Union to accede to Chiquita's demand under the circumstances.

{¶15} The record indicates that Chiquita submitted invoices to National Union for defense-cost payments. And email communications between the parties demonstrate that Chiquita expected National Union to fund the underlying lawsuits after the trial court had issued its declaratory-judgment order. We therefore find that Chiquita demanded performance under the policies. And in light of the trial court's order, it was reasonable for National Union to accede to Chiquita's demand for payment. Chiquita argues that National Union could have refused to pay because (1) the court's order was interlocutory and was not binding, and (2) the court's order did not require National Union to pay defense costs but merely set forth National Union's obligations under the policies. The practical reality, however, is that National Union had little choice but to begin funding Chiquita's defense until the court's order became final and National Union was able to appeal it. Refusing to fund the defense could have subjected National Union to a claim of bad faith, as well as prejudiced it in the underlying litigation. *See* Restatement Section 35, comment a (stating that when the cost of resisting an unjustified demand poses a risk of further loss or liability beyond the amount already in controversy, the party on whom the demand is made may have no practical alternative but to submit). Therefore, we find that submitting to Chiquita's demands under these circumstances was reasonable.

### C. The Letters that Accompanied Payment

{¶16} Finally, we must determine whether National Union tendered payment while reserving its right to seek recoupment of any costs not due under the terms of the policies. *See Trainor*, 33 Ohio St.2d at 45, 294 N.E.2d 874 (holding that an insurer may defend an action pursuant to a unilateral reservation of rights concerning any potential policy defenses provided it gives notice to the insured).

{¶17} National Union began funding Chiquita's defense on January 29, 2010, nine days after the trial court journalized its order declaring that National Union had a duty to defend Chiquita in the underlying lawsuits. The letter accompanying the first payment stated, "By letter dated November 24, 2009, National Union agreed to begin funding Chiquita's defense relative to the underlying lawsuits subject to a complete reservation of rights as set forth in the November 24, 2009 letter. Accordingly, enclosed please find a check totaling $500,000."

The November 24, 2009 letter stated,

Judge Martin * * * found [in a letter mailed to the parties prior to journalization of an order] that National Union has a duty to defend Chiquita * * *. National Union does not agree that it has a duty to defend as the Underlying Lawsuits do not allege an occurrence that took place in the coverage territory. National Union intends on appealing Judge Martin's findings at the appropriate time * * * National Union therefore would likely be entitled to reimbursement for all defense costs and expenses that it pays Chiquita under the National Union policies * * * .

{¶18} The January 29, 2010 letter that included National Union's initial payment to Chiquita concluded with a paragraph stating, "Moreover, and as set forth in detail in our

letter of November 24, 2009, by participating in the funding of Chiquita's defense, National Union does not intend to waive any of its rights or defenses including, but not limited to, the right to appeal the court's finding that National Union has a duty to defend  * * * ."

{¶19}  Cover letters enclosed with payments made to Chiquita on February 16, 2010, June 2, 2010, and July 12, 2010 mirrored this language.  There is not a cover letter in the record concerning a payment made on April 21, 2010.

{¶20}  On December 16, 2010, National Union sent Chiquita yet another payment for defense costs.  In pertinent part, the cover letter that accompanied that payment stated,

> Please be advised that this payment is not intended to waive any of National Union's rights including, but not limited to, the right to appeal any of the court's findings, or the right to seek a determination as to Chiquita's obligations to reimburse National Union for amounts paid pursuant to the terms of the National Union policies, the applicable large risk rating plans, and/or legal agreements.

{¶21}  Letters including similar language accompanied the next ten defense cost payments that National Union made to Chiquita.

{¶22}  On January 24, 2012, National Union made an interest payment to Chiquita of $6,687.44.  The enclosed letter stated that payment was not intended to waive any of National Union's rights, including "the right to seek a determination as to Chiquita's obligations to reimburse National Union for amounts paid to Chiquita pursuant to the Court's orders."

{¶23}  We find that these letters were sufficient to reserve National Union's right to seek restitution of defense costs should a court determine that there was no duty to defend.

### D. Our Holding is a Narrow One

**{¶24}** Based on the particular facts of this case, National Union is entitled to restitution of its defense costs and interest payments. But our holding is a narrow one. Specifically, where (1) an insurer does not provide a defense until after a court has entered judgment declaring that the insurer has a duty to defend, (2) the insured demands that the insurer provide a defense, (3) the insurer provides the defense under a reservation-of-rights stating that it may seek to be reimbursed, and later (4) an appellate court determines that a duty-to-defend never existed, then (5) the insurer is entitled to be reimbursed for its defense-cost expenditures under a theory of restitution.

**{¶25}** In this same assignment of error, Chiquita also argues that the trial court erred when it held that National Union was entitled to reimbursement as the prevailing party on appeal. This issue is moot and we decline to address it. *See* App.R. 12(A)(1)(c).

**{¶26}** Chiquita's first assignment of error is overruled.

### III.    Prejudgment Interest Award

**{¶27}** In its second assignment of error, Chiquita argues that the trial court erred when it determined that National Union was entitled to prejudgment interest calculated from the date that it made each payment, instead of from the date of this court's decision in *Chiquita I.* We review the trial court's determination of when prejudgment interest began to accrue for an abuse of discretion. *Wagner v. Midwestern Indem. Co.*, 83 Ohio St.3d 287, 293, 699 N.E.2d 507 (1998); *Hines v. Kelsch*, 1st Dist. Hamilton No. C-000445, 2001 Ohio App. LEXIS 3606, *12 (Aug. 17, 2001).

**{¶28}** The purpose of prejudgment interest is to fully compensate the aggrieved party. *Royal Elec. Constr. Corp. v. The Ohio State Univ.,* 73 Ohio St.3d 110, 116, 652 N.E.2d 687 (1995). Prejudgment interest starts to accrue when money becomes "due and payable."

R.C. 1343.03(A). Contractual interest generally accrues from the time money should have been paid. *Local Marketing Corp. v. Prudential Ins. Co. of Am.*, 159 Ohio App.3d 410, 2004-Ohio-7001, 824 N.E.2d 122, ¶ 19 (1st Dist.); *Hines* at *13. It follows that, where monies demanded under a contract were never actually due, interest accrues from the time of overpayment. To make National Union whole, the trial court determined that interest should accrue from the time of each payment. There is nothing arbitrary, unreasonable, or unconscionable about the trial court's decision. *See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218, 450 N.E.2d 1140 (1983). We therefore overrule Chiquita's second assignment of error.

{¶29} The trial court's judgment is affirmed.

Judgment affirmed.

DEWINE, J., concurs.
STAUTBERG, J., dissents.

STAUTBERG, J., dissenting.

{¶30} I respectfully dissent. National Union is not entitled to recover the payments it made to Chiquita, and I would reverse the judgment of the trial court.

### A Declaratory Judgment is not a Judgment for Monetary Damages

{¶31} It is important to remember that this case is, at its core, a declaratory-judgment action. Chiquita and National Union both sought declarations of their respective rights under the policies of insurance at issue. Chiquita also asserted a claim for breach of contract and monetary damages, but that claim was never determined. The trial court's December 16, 2011 final judgment entry, therefore, was a declaratory judgment, as requested, of the respective rights and obligations of Chiquita and National Union. There was no monetary-damage award except the awarding of court costs.

11

{¶32} Upon this court's reversal of the trial court's declaratory judgment in *Chiquita I*, National Union had the declaration it sought–that it owed no duty to defend–which was of great value going forward. But by that time National Union had paid Chiquita's accumulated defense costs. National Union paid those defense costs pursuant to declaratory judgments, interlocutory for the most part, and not a judgment for damages or any court order to do so.

**The Relationship Between the Parties was Contractual**

{¶33} The relationship between an insurer and an insured is one of contract. "It is a long-standing principle of law that an insurance policy is a contract, and that the relationship between the insurer and the insured is purely contractual in nature. Therefore, the terms of the policy must be mutually agreed-upon to be effective, in accordance with contract principles." *Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St.3d 107, 109, 472 N.E.2d 1061 (1984) (citation omitted).

{¶34} In this matter, there were many insurance contracts between National Union and Chiquita. None of the contracts have any provisions for recoupment or reimbursement to National Union for defense costs of an insured it paid that are subsequently determined to not be owed. Thus, had National Union paid defense costs of Chiquita in the absence of any court action on the issue, there would be no contractual provision allowing it to recover those defense costs already paid. The issue is no different in this situation, in my view, when National Union paid the defense costs after the trial court issued its declaratory judgment that there was a duty to defend, and that determination was later reversed by this court.

{¶35} There are three ways that National Union could have protected itself in this situation. First, National Union could have had a policy provision allowing it to seek

recovery or reimbursement of previously paid defense costs in the event, like here, an appellate court reverses a finding of a duty to defend. Second, National Union could have reached an express agreement with Chiquita (outside of the insurance policy) that defense costs would be reimbursed in the event the trial court's determination was reversed. Third, National Union could have withheld payment of defense costs pending the outcome of the appeal of the trial court's declaratory judgment.

{¶36} National Union did none of these.

{¶37} Rather, National Union paid Chiquita's defense costs beginning with the trial court's first entry finding that there was a duty to defend, all the while insisting that there was no such duty. Accompanying the payments were letters from National Union's counsel reserving and disclaiming waivers of rights of National Union to seek reimbursement. National Union did not and could not reserve any right it did not possess. A reservation of rights is only effective as to the rights possessed. Chiquita, in turn, never agreed to reimburse National Union.

### The Duty to Defend is Broad

{¶38} The duty to defend is broader than the duty to indemnify. *City of Sharonville v. Am. Emp. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833. National Union's obligation in this matter was to provide a defense for covered claims or potentially covered claims. "The insurer must defend the insured in an action when the allegations state a claim that potentially or arguably falls within the liability insurance coverage." *Ohio Govt. Risk Mgmt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 19, citing *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 179, 459 N.E.2d 555 (1984). In this matter, National Union has now asked this court to narrow its broad obligation to defend, so that the duty to defend is coterminous with the duty to indemnify. I

do not agree with this determination. *See Gen. Star Indem. Co. v. Driven Sports, Inc.*, 80 F.Supp.3d 442 (E.D.N.Y.2015) ("[A]warding recoupment in this case would effectively make the duty to defend coextensive with the duty to indemnify, despite the fact that New York courts have repeatedly held that the duty to defend is broader.").

{¶39} National Union recognized the existence of potentially covered claims and stated its intention to participate in Chiquita's defense in its November 3, 2008 correspondence to Chiquita, wherein it stated, "Subject to a full reservation of all of its rights under the National Union Policies and applicable law, including the right to decline coverage, in whole or in part, and to seek declaratory relief at a later time, if appropriate, National Union agrees to participate in the defense of Chiquita relative to the Underlying Lawsuits."

{¶40} That was nearly a year prior to the trial court's September 2009 letter decision on the cross-motions for summary judgment, and more than a year before National Union made its first contribution to Chiquita's defense costs.

{¶41} The recognition of a potentially covered claim can also be found in May 19, 2009 correspondence from counsel for National Union to counsel for Chiquita, wherein National Union proposed two options for funding the defense: "Both options contemplate the Underlying Lawsuits potentially implicate coverage under the eight primary policies * * * ."

{¶42} National Union's November 2008 letter went on to point out many of the contractual provisions implicated in an insured's request for coverage and clearly set out the conditions and limitations of coverage, as well as reciprocal obligations imposed on Chiquita and its counsel. For example, National Union's letter set forth that its obligation to pay for Chiquita's defense was "limited to paying rates that are consistent with rates it typically pays to counsel retained in the Southern District of Florida to handle similar cases," and the

letter required Chiquita's counsel "to abide by the material terms and reporting requirements as set forth in the AIG Litigation Guidelines," a document in excess of 20 pages. National Union's letter also noted Chiquita's duty to cooperate pursuant to the policies:

> Please note that under the terms and conditions of the National Union Policies, Chiquita is required to fully cooperate with National Union. Accordingly, please keep us advised of the status of the Underlying Lawsuits, and please copy us on all pleadings, discovery, motions, transcripts of testimony or hearings, defense reports and significant development. In addition, please notify us immediately of any information concerning settlement discussions.

{¶43} Thus, the National Union insurance policies impose reciprocal contractual duties and burdens on insureds that must be met once the duty to defend is triggered and accepted. Notably absent is any duty to reimburse National Union in the event a court later determines there is no duty to defend. Moreover, although the record is replete with disputes between National Union and Chiquita regarding the reasonableness and/or scope of the work performed by defense counsel, there is no argument made by National Union that Chiquita breached any of its reciprocal contractual obligations, such as its duty to cooperate.

{¶44} There is no doubt that National Union stated that it was reserving "the right to seek reimbursement for attorneys' fees or costs incurred with regard to allegations and/or claims for which there is no coverage." In informal and formal communications from National Union thereafter, there were proposals for agreements to fund defense costs in which Chiquita would agree to reimburse National Union in the event a court decided there

was no duty to defend. Counsel for Chiquita subsequently rejected National Union's proposals in correspondence to counsel for National Union on August 19, 2009.

{¶45} There can be no recovery under the theory of restitution to prevent unjust enrichment if there is an express agreement between the parties. *See Hughes v. Oberholtzer*, 162 Ohio St. 330, 123 N.E.2d 393 (1955); *Nye v. Craig*, 11th Dist. Portage No. 93-P-0094, 1994 Ohio App. LEXIS 2910 (June 30, 1994). "According to the parties' stipulations, appellant agreed to provide funds for the addition. This express agreement negates any recovery by appellant under the doctrine of unjust enrichment." *See also Giles v. Hanning*, 11th Dist. Portage No. 2001-P-0073, 2002-Ohio-2817, ¶ 12.

### Split in Authority Regarding the Insurer's Right to Recoupment

{¶46} It is recognized that the ability of an insurer to recover defense costs already paid has been the subject of much debate, and there is a split in authority. Although an Ohio federal court has weighed in on the debate, *see United Natl. Ins. Co. v. SST Fitness*, 309 F.3d 914 (6th Cir.2002), apparently, no Ohio state courts have addressed the issue. Cases allowing reimbursement have done so under different theories. One line of reasoning is that the parties to an insurance contract never bargained for a defense on claims not covered by the terms of the policy, and therefore an insurer is not obligated to pay for a defense of these claims. *See Scottsdale Ins. Co. v. Sullivan Props., Inc.*, (D. Haw.) CV No. 04-00550 HG-BMK, 2007 U.S. Dist. LEXIS 57021, *9-10 (Aug. 2, 2007); *Jim Black & Assoc., Inc. v. Transcontinental Ins. Co.*, 932 So.2d 516, 518 (Fla. App. 2006); *see Buss v. Superior Court*, 16 Cal.4th 35, 51, 93 P.2d 766, 65 Cal. Rptr. 366 (1997). A related theory that courts have employed to allow for reimbursement is avoidance of unjust enrichment. *See St. Paul Fire & Marine Ins. Co. v. Compaq Computer Corp.*, 337 F.Supp.2d 719, 725 (D.Minn.2005), *aff'd,* 457 F.3d 766 (8th Cir.2006); *Buss* at 51-52. Yet another theory of recovery is that defending pursuant to a reservation of the right to recoupment of costs

spent on uncovered claims creates a new, implied contract, independent of the policy at issue. S*ee SST Fitness.*

**{¶47}** Cases not allowing for reimbursement of defense costs generally turn on the fact that the policy at issue did not provide for reimbursement of uncovered defense costs. *See, e.g., Westchester Fire Ins. Co. v. Wallerich*, 527 F.Supp.2d 896, 908 (2007), *aff'd in part, rev'd in part*, 563 F.3d 707 (8th Cir.2009); *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods, Co.,* 215 Ill.2d 146, 165, 828 N.E.2d 1092 (2005); *Shoshone First Bank v. Pacific Emp. Ins. Co.*, 2 P.3d 510, 514 (Wy.2000) In general terms, those cases conclude that an insurer is not entitled to change its insurance contract through a reservation of rights.

**{¶48}** In *Midwest Sporting Goods,* the Illinois Supreme Court held,

As a matter of public policy, we cannot condone an arrangement where an insurer can unilaterally modify its contract, through a reservation of rights, to allow for reimbursement of defense costs in the event a court later finds that the insurer owes no duty to defend. We recognize that courts have found an implied agreement where the insured accepts the insurer's payment of defense costs despite the insurer's reservation of a right to reimbursement of defense costs. However, as stated by the court in *America States Insurance Co.*, cited by the *Shoshone First Bank* court, recognizing such an implied agreement effectively places the insured in the position of making a Hobson's choice between accepting the insurer's additional conditions on its defense or losing its right to a defense from the insurer.

*Midwest Sports Goods Co.* at 162-163.

**{¶49}** Pennsylvania also does not permit recoupment in the absence of a contractual provision:

The so-called minority position articulated above is consistent with our longstanding common law rule that the duty to defend is broader than the duty to indemnify. * * * Where the insurance contract is silent about the insurer's right to reimbursement of defense costs, permitting reimbursement for costs the insurer spent exercising its right and duty to defend potentially covered claims prior to a court's determination of coverage would be inconsistent with Pennsylvania law. It would amount to a retroactive erosion of the broad duty to defend in Pennsylvania by making the right and duty to defend contingent upon a court's determination that a complaint alleged covered claims, and would therefore narrow Pennsylvania's long-standing view that the duty to defend is broader than the duty to indemnify.

*Am. & Foreign Ins. Co. v. Jerry's Sport Center, Inc.*, 606 Pa. 584, 613-614, 2 A.3d 526 (2010).

{¶50} A more recent analysis can be found in *Natl. Sur. Corp. v. Immunex Corp.*, 176 Wash.2d 872, 297 P.3d 688 (2013), wherein the Washington Supreme Court also thoroughly analyzed the contractual and public-policy issues involved in the question and determined that recoupment of defense costs was not allowed. That court reasoned as follows:

We reject National Surety's view that an insurer can have the best of both options: protection from claims of bad faith or breach without any responsibility for the costs of defense if a court later determines there is no duty to defend. This "all reward, no risk" proposition renders the *defense* portion of a reservation of rights defense illusory. The insured receives no greater benefit than if its insurer had refused to defend outright.

*Natl. Sur. Corp.* at 885.

**{¶51}** That court also noted that "allowing recoupment to be claimed in a reservation of rights letter would allow the insurer to impose a condition on its defense that was not bargained for." *Id.* at 886.

**{¶52}** I believe the reasoning set forth in the foregoing cases from other jurisdictions denying recovery provides the better path to follow in resolving this case.

### Theories of Restitution and Implied-Contract Do Not Apply

**{¶53}** In its decision below, the trial court relied on the theory of restitution resulting from the reversal of a judgment where the underlying judgment had been satisfied. *See Keybank Natl. Assn. v. Mazer Corp.*, 188 Ohio App.3d 278, 2010-Ohio-1508, 935 N.E.2d 428 (2d Dist.). That case, however, involved circumstances where the trial court's judgment was involuntarily satisfied. In contrast, National Union voluntarily made payments of defense costs to Chiquita, notwithstanding its disclaimers and reservations of rights. Indeed, the court in *Mazer* recognized this distinction: "A voluntary satisfaction of a judgment waives any appeal from that judgment." *Id.* at ¶ 54. The situation would be quite different had Chiquita been awarded monetary damages for breach of contract and obtained satisfaction of the judgment through collection proceedings prior to a reversal of the trial court's judgment. That did not happen here, however, and that distinction does make a difference.

**{¶54}** A declaratory-judgment action is a special proceeding. The payment of the defense costs was not a satisfaction of the judgment because the judgment was not for monetary damages. However, the reasoning behind finding mootness for voluntary satisfaction can be applied to National Union's claim for reimbursement. The trial court relies on the fact that the payment was not voluntary because National Union would otherwise be held in contempt of the interlocutory orders. I disagree. Essentially ignoring

the court's declaratory judgment may be unwise as a litigation strategy, but it was well within National Union's rights and would not constitute contempt. The trial court did not order National Union to do anything. It simply stated that it owed Chiquita a defense. There would be no contempt under those circumstances. *See, e.g., S. Euclid Fraternal Order of Police, Lodge 80 v. D'Amico*, 29 Ohio St.3d 50, 505 N.E.2d 268 (1987).

## Conclusion

{¶55} In my view, National Union is not entitled to recover the funds it expended for Chiquita's defense. Despite numerous National Union policies and provisions, there is simply no right to recoupment or reimbursement to be found therein. While acknowledging that it is the minority view, I believe the better approach is to hold National Union to its bargained-for contractual position and deny recovery of the defense costs it paid to Chiquita.

Please note:

The court has recorded its own entry this date.