[Cite as *Aurora Hill, Ltd. v. Bremner*, 2023-Ohio-3766.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| AURORA HILL, LTD., | **CASE NO. 2023-P-0005** |
| Plaintiff-Appellant, | |
| - vs - | Civil Appeal from the<br>Court of Common Pleas |
| JOHN BREMNER, | |
| Defendant-Appellee. | Trial Court No. 2021 CV 00185 |

## O P I N I O N

Decided: October 16, 2023
Judgment: Affirmed

*Joseph P. Szeman*, Hennig, Szeman & Klammer Co., LPA, The Matchworks Building, 8500 Station Street, Suite 245, Mentor, OH 44060 (For Plaintiff-Appellant).

*Gerrit M. denHeijer*, Giulitto Law Office, 222 West Main Street, P.O. Box 350, Ravenna, OH 44266 (For Defendant-Appellee).

ROBERT J. PATTON, J.

{¶1} Appellant, Aurora Hill, Ltd. ("Aurora Hill"), appeals from the judgment of the Portage County Court of Common Pleas, granting summary judgment in favor of appellee, John Bremner, on Aurora Hill's claim seeking recovery of partnership funds which it claims were improperly retained by appellee in violation of the limited partnership agreement to which the parties were subject. At issue is whether the trial court properly determined there is no genuine issue of material fact to be litigated on Aurora Hill's

underlying complaint alleging it was entitled to restitution such that appellee is entitled to judgment as a matter of law. We affirm.

{¶2} The facts in this matter are in large part undisputed. Appellee is a resident of Illinois who is a commodities trader. Argo Wealth Management, Inc. ("Argo") is the general partner of appellant. Aurora Hill is governed by a partnership agreement.

{¶3} On January 16, 2019, appellee executed a subscription agreement to become a limited partner of Aurora Hill. The partnership agreement provides, in pertinent part:

> After the Partnership begins operations, an investor will become a Limited Partner in the Partnership on the first day of the month following receipt by the Partnership of the investor's capital contribution and acceptance by the General Partner of such investor's executed Limited Partnership Agreement, Subscription Agreement/Power of Attorney, Purchaser Questionnaire and any other documents required by the General Partner (collectively, the "subscription documents") no less than five (5) days preceding the first day of the month.

{¶4} On February 1, 2019, Aurora Hill sent a letter to appellee accepting him as a limited partner. Appellee invested $200,000 into the partnership. Notwithstanding the above, Argo did not admit appellee into the limited partnership until March 1, 2019. Appellee was made aware by Argo he was not admitted to the partnership in mid-February. Apparently, appellee was contacted by the president of Argo who advised him that, due to advice from Argo's attorney, Argo did not invest his funds on February 1, 2019 for failure to disclose a specific fund in the limited partnership. According to appellee, Argo's president represented that appellee would become a participating member of the limited partnership starting March 1, 2019.

2

{¶5} Aurora Hill experienced significant losses in the month of February 2019 which caused a substantial drawdown in the partnership's capital. According to Aurora Hill, had appellee's funds been properly accounted for as of February 1, 2019, his capital account would have been negatively adjusted to reflect the losses incurred for that month.

{¶6} In July 2019, appellee ended his participation in the limited partnership and submitted a request for redemption. Appellee redeemed $95,993.78 of his original investment. Appellee would ultimately file an arbitration claim with the National Futures Commission based on this transaction. That claim was unsuccessful, but the conduct of Argo was found to be improper by the Commission.

{¶7} On April 7, 2021, Aurora Hill filed a complaint that sought recovery of partnership funds to which it alleged appellee owed due to his technical admission to the limited partnership on February 1, 2019. Aurora Hill essentially alleged appellee received improper preferential treatment, of which he was aware and to which he acquiesced, by Argo when it bumped appellee's membership back to March 1, 2019. In doing so, Aurora Hill alleged appellee was extended special treatment in order to avoid the losses sustained by other limited partners during the month of February. Although not specifically pleaded, Aurora Hill alleges its complaint stated a claim for restitution.

{¶8} Appellee filed a motion to dismiss to which Aurora Hill duly opposed. The trial court denied the motion, concluding Aurora Hill sufficiently stated a restitution claim to withstand a Civ.R.12(B)(6) challenge. The parties subsequently filed joint stipulations and, in December 2022, filed their respective motions for summary judgment. The parties additionally filed memoranda in opposition to the respective motions for summary judgment.

3

{¶9} On January 27, 2023, the trial court granted appellee summary judgment, concluding that Aurora Hill's complaint alleged a claim for unjust enrichment. And, because the matter at issue was derivative of the partnership agreement, it was governed by an express contract. The court therefore concluded there was no genuine issue of material fact to support a claim for unjust enrichment and appellee was entitled to judgment as a matter of law. Aurora Hill now appeals and assigns the following as error:

{¶10} "The trial court erred in granting the defendant-appellee summary judgment."

{¶11} Under its sole assignment of error, Aurora Hill asserts the trial court erred in concluding that its cause of action was an unjust enrichment claim; instead, it insists the complaint stated a cause of action in restitution and therefore genuine issues of material fact remain for litigation. We do not agree.

{¶12} We review a trial court's entry of summary judgment de novo, i.e., "'independently and without deference to the trial court's determination.'" *Johnson v. North Kingsville*, 11th Dist. Ashtabula No. 2020-A-0031, 2021-Ohio-1012, ¶ 10, quoting *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993) (citation omitted).

{¶13} Civ.R. 56(C) provides that summary judgment is proper when:

(1) [n]o genuine issue as to any material fact remains to be litigated;

(2) the moving party is entitled to judgment as a matter of law; and

(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom

4

the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶14} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court [e.g., pleadings, depositions, answers to interrogatories, etc.] which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996), citing Civ.R. 56(C) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324, 106 S.Ct. 2548, 91 L.Ed 2d 265 (1986). If the moving party satisfies this burden, the nonmoving party has the burden to provide evidence demonstrating a genuine issue of material fact, pursuant to Civ.R. 56(E). *Id.* at 293.

{¶15} Aurora Hill asserts the trial court erroneously framed its cause of action as a claim for unjust enrichment. Initially, it maintains the trial court rendered inconsistent rulings when it (1) denied appellee's motion to dismiss for failure to state a claim concluding Aurora Hill's complaint sufficiently pleaded a claim for restitution, but (2) granted appellee's motion for summary judgment concluding Aurora Hill's complaint was premised upon a claim for unjust enrichment.

{¶16} Although the trial court initially framed Aurora Hill's complaint as one alleging a claim for restitution, it bears noting that the complaint fundamentally failed to set forth a specific cause of action. The complaint detailed copious facts regarding the parties' association and why Aurora Hill believed it suffered damages; namely, because Argo gave appellee preferential treatment to the detriment of the limited partnership. The complaint relied upon the limited partnership agreement as a basis for its position, but did

5

not plead breach of contract. And, throughout the underlying proceedings, it is fundamentally clear Aurora Hill is seeking equitable relief, not damages at law for a breach of contract.

{¶17} Moreover, the complaint alleged that appellee received a benefit, of which he knew, and retained the same which redounded to the economic disadvantage of Aurora Hill. The claim did not, however, expressly assert what equitable remedy it was seeking to make it whole. The complaint was, at best, vague and open-ended. In effect, although the trial court framed Aurora Hill's complaint in terms of restitution, after considering the parties' motions for summary judgment and memoranda in opposition, the court had more evidentiary quality material permitting it to recast the complaint as *seeking* restitution due to appellee's alleged unjust enrichment. We consequently fail to see how the trial court's initial construction of the complaint has any meaningful bearing on its ultimate order concluding Aurora Hill had failed to establish unjust enrichment as a matter of law.

{¶18} Next, Aurora Hill vehemently denies that it is seeking damages for unjust enrichment, and instead argues it is seeking equitable restitution. Aurora Hill asserts it "certainly reiterated the nature of the claim in all of its pleadings." The record, however, does not support Aurora Hill's overstatement.

{¶19} In Aurora Hill's brief in opposition to appellee's motion to dismiss, it sets forth elements of the "remedy" of equitable restitution. It follows this recitation with citing the elements for the "cause of action" of unjust enrichment. Aurora Hill proceeds to argue that its claim does not depend upon the intent of the parties. "Rather, it turns on equitable considerations that require the imposition of a constructive trust because the person

6

holding the property would be *unjustly enriched* if permitted to keep the property."
(Emphasis added.) (Aurora Hill's opposition to dismiss, p.4). Aurora Hill makes the identical argument using the same citations in its motion for summary judgment. (See Aurora Hill's motion for summary judgment, p.7). Although Aurora Hill somewhat reverses course in its memorandum in opposition to appellee's motion for summary judgment (stating "* * * Aurora Hill's complaint is one for restitution, it is not and never has been an unjust enrichment claim * * *"), its vacillation between its theory of the case is conspicuous. In short, Aurora Hill is far from decisive as to the nature of its allegations or how the court should construe its ambiguous complaint.

{¶20} Next, Aurora Hill appears to advance a new dimension to its insistence that its complaint merely sought restitution. It argues that restitution is a well-recognized form of relief for the recovery of sums improperly paid pursuant to an underlying contractual relationship between parties. Aurora Hill observes that "[m]oney paid under the mistaken supposition of the existence of a specific fact which would entitle the payee to the money, which money would not have been paid had it been known to the payer that the fact did not exist, may be recovered [in restitution]." *Firestone Tire & Rubber Co. v. Central Nat. Bank of Cleveland*, 159 Ohio St. 423, 112 N.E.2d 636 (1953), paragraph two of the syllabus. Aurora Hill continues "[t]he law of Ohio is clear that a payer, even if negligent in making payment under a mistake of fact, may recover if his act has not resulted in a change in the position of the innocent payee to his detriment." *Id.* at 439. Apparently, Aurora Hill, for the first time on appeal, claims that the alleged preferential treatment was based upon a mistake and, to the extent appellee would suffer no detriment, it is entitled to restitution.

7

**{¶21}** It is a well-established rule of appellate review that a court will not consider issues that an appellant fails to raise initially at the trial court. *Warmuth v. Sailors*, 11th Dist. Lake No. 2007-L-198, 2008-Ohio-3065, ¶ 36, citing *Lippy v. Society Natl. Bank*, 88 Ohio App.3d 33, 40, 623 N.E.2d 108 (11th Dist.1993) (appellant cannot raise an argument on appeal for the first time when there was no indication that the argument was brought to the trial court's attention and considered below). "The well-settled rule which requires the parties to adhere on appeal to the theory upon which they presented the case in the trial court, operates to limit the scope of the review * * * the case, on appeal, must be reviewed and decided on the theory on which it was tried in the court below * * *." *Webb v. Grimm*, 116 Ohio App. 63, 74, 186 N.E.2d 739 (2d Dist.1961), quoting 3 American Jurisprudence, Section 830, at 372. While we are entitled to disregard Aurora Hill's argument because it was not preserved in the trial court, even if it were raised, it lacks merit.

**{¶22}** In *Firestone*, a buyer filed suit against a bank to recover monies paid to the bank under the mistaken belief that the sums were due on accounts assigned by a seller to the bank as security for a loan. The Supreme Court of Ohio determined that, notwithstanding the buyer's arguable negligence in remitting payment, the bank did not change its position regarding a portion of the sum paid by the buyer which was credited against the loan made to the seller such that recovery to the buyer would be precluded. *Firestone*, 159 Ohio St. at 440. As such, the Court determined "there [was] a clear basis for recovery of the money paid under mistake of fact." *Id.*

**{¶23}** The record does not support the conclusory proposition that the general partner, Argo, via its agents, engaged in any mistake. Indeed, it appears Argo withheld

8

appellee's investment contribution deliberately and, whether in violation of the limited partnership agreement or not, advised appellee in mid-February that, despite his acceptance into the limited partnership, he would not be participating until March 1, 2019. We can discern no mistake of fact and nothing suggests Argo's actions were anything but intentional. Aurora Hill's "mistake-of-fact" argument is without merit.

{¶24} Furthermore, *Firestone* does not stand for the principle that restitution is a cause of action; to the contrary, the buyer in *Firestone* mistakenly paid sums to the bank which, under the circumstances, the court determined the buyer was entitled to recover. If anything, *Firestone* underscores that restitution, whether full or partial, is the remedy for a mistake of fact. *Firestone*, consequently, is distinguishable from this case and does not support Aurora Hill's position.

{¶25} Next, Aurora Hill cites the Fourth Appellate District's decision in *WesBanco Bank, Inc. v. Smoked Ribs, Inc.*, 2016-Ohio-177, 45 N.E.3d 1066 (4th Dist.2016). In that case, a bank employee used an incorrect code for credit card transactions relating to a hotel's account. As a result, a restaurant (Smoked Ribs, Inc.) was paid instead of the hotel, resulting in an overpayment of approximately $239,000 to the restaurant. *Id.* at ¶ 4-5. Consistent with *Firestone*, the bank was allowed to partially recover the overpayments. The recovery, however, was limited because Smoked Ribs was able to establish that it believed, in good faith, the money was a result of profits. As such, when it used the money for improvements, it detrimentally relied on this belief to pay for the improvements which it would not have otherwise made. Furthermore, the restaurant made the improvements before receiving notice of the overpayments. *Id.* at ¶ 48-49.

9

Case No. 2023-P-0005

{¶26} Similar to *Firestone*, we discern no basis to conclude that restitution was a cognizable cause of action. Indeed, the court noted that the bank filed a complaint "*seeking* restitution of the $239,814.38 it mistakenly paid to Smoked Ribs *based on* contract, common law, and statute." (Empahsis added.) *WesBanco*, at ¶ 7. The court therefore underscored that restitution was the remedy the bank was seeking, not its primary cause of action or theory upon which the remedy was premised. *WesBanco* does not support Aurora Hill's argument.

{¶27} Finally, Aurora Hills cites the First District's decision in *Chiquita Brands Int'l., Inc. v. Nat'l Union Fire Ins. Co. Pittsburgh PA*, 2015-Ohio-5477, 57 N.E.3d 97 (1st Dist.2015). In that case, an insured brought an action against a liability insurer for declaratory judgment alleging that they owed a duty to defend the insured in an underlying tort action. The trial court entered judgment in favor of the insured declaring that the insurer had a duty to defend. The insurer funded the defense but reserved a right to seek reimbursement of the payments. *Id.* at ¶ 2. The insurer ultimately appealed the declaratory order and the appellate court reversed the judgment, holding the insured did not have a duty to defend. The appellate court remanded the matter to the trial court to determine whether the insurer was entitled to recoup the payments. *Id.* at ¶ 3.

{¶28} On remand, the insurer moved the trial court for restitution or, in the alternative, for reimbursement of defense costs. The trial court determined the insurer was entitled to recoup the payments based on an implied-in-fact contractual right to reimbursement. *Id.* at ¶ 4. The appellate court, however, disagreed that an implied-in-fact contract existed, but affirmed the substance of the trial court's judgment stating that "Restitution is the Appropriate *Remedy*[.]" (Emphasis added.) *Id.* at heading II.

10

{¶29} The appellate court emphasized that its prior determination that no duty to defend existed was premised upon the insured's intentional conduct, conduct not covered by its policies with the insurer. As such, there was never a duty to defend. *Id.* at ¶ 13. Instead, once the insurer began financing the defense, it sent the insured letters specifically stating it was reserving its right to appeal and to seek reimbursement for its payments. *Id.* at ¶ 17-18. Restitution, in this case, was the "means to enforce adherence to a contract through ordering repayment of a sum to which the recipient was never entitled under the contract's terms." *Id.* at ¶ 8, citing 1 Restatement of the Law 3d, Restitution and Unjust Enrichment, Section 35, comment a (2011).

{¶30} The foundation of the foregoing holding is premised upon a declaratory judgment action, the ultimate outcome of which resulted in the insurer having no duty to defend. In other words, the cause of action in that case was contractual in nature and focused upon whether the insurer had a duty to defend. The appellate court answered that question in the negative. The conclusion that the insurer was entitled to the remedy of restitution is based upon justice, i.e., to prevent unjust enrichment due to overperformance under a contract or extra-contractual performance. "Performance in such cases is not the result of mistake, because the claimant has consciously and justifiably resisted a demand for a performance that was not in fact due." *See Id.* at comment a. Where a party who objects to performance and submits a reservation of rights, the party receiving the benefit that was not legally due is unjustly enriched and thus entitled to the remedy of restitution. *See Id.*

{¶31} In the instant matter, Aurora Hills allegedly sought equitable relief in restitution for losses it purportedly experienced due to the general partner's failure to

11

include appellee in the limited partnership at the appropriate time. This relief or remedy is not, however, premised on any underlying legal or equitable theory. Without a foundational legal claim, the remedy has nothing to which it might be anchored. *Chiquita*, therefore, is also distinguishable.

{¶32} Unjust enrichment occurs when an individual "has and retains money or benefits which in justice and equity belong to another[.]" *Hummel v. Hummel*, 133 Ohio St. 520, 528, 14 N.E.2d 923 (1938). It bears significant emphasis, however, that restitution is not a claim or a cause of action, it is a *remedy*. *Cirino v. Bureau of Workers' Compensation*, 2021-Ohio-1382, 171 N.E.3d 840, ¶ 16 (10th Dist.), citing *Santos v. Ohio Bur. Of Workers' Comp.*, 101 Ohio St.3d 74, 2004-Ohio-28, 801 N.E.2d 441, ¶ 11 ("[h]istorically, restitution has been available both in equity and in law *as the remedy* for an unjust enrichment of one party at the expense of another") (emphasis added). *See also Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20 (restitution is the remedy for unjust enrichment); *Musial Offices Ltd. v. County of Cuyahoga*, 2020-Ohio-5426, 163 N.E.3d 84, ¶ 27 (8th Dist.) The remedy of restitution is designed "'to prevent one from retaining property to which he is not justly entitled.'" *San Allen v. Buehrer*, 2014-Ohio-2071, 11 N.E.3d 739, ¶ 114 (8th Dist.), quoting *Keco Industries, Inc. v. Cincinnati & Suburban Bell Tel. Co.*, 166 Ohio St. 254, 256, 141 N.E.2d 465 (1957).

{¶33} Pursuant to the equitable doctrine of unjust enrichment, "'[a] person who has been unjustly enriched at the expense of another is required to make restitution to the other.'" *Kammer Asphalt Paving Co., Inc. v. East China Twp. Sch.*, 443 Mich. 176, 185, 504 N.W.2d 635 (1993), quoting Restatement Restitution 1st, Sec. 1, p. 12 (second

12

alteration in original). "A claimant entitled to restitution may obtain a judgment for money in the amount of the defendant's unjust enrichment." 2 Restatement Restitution & Unjust Enrichment, 3d, Sec. 49(1).

{¶34} Aurora Hill's contention that its complaint alleged a claim or cause of action for restitution is inconsistent with the nature of restitution as a remedy. Historically, restitution can refer both to liabilities and to remedies leading to misunderstanding about its correct meaning in some contexts. See 1 Restatement Restitution & Unjust Enrichment, 3d, Sec. 1, comment *e*. This confusion likely has an historical cause: in the centuries before the Restatement, "[s]o long as legal obligations were classified by the procedures available to enforce them, what we now call restitution did not need an underlying theory of liability." *Id.* at Sec 4, comment *b*. Today, references to restitution, particularly in Ohio law, are most common in the remedial context, such as statutes requiring a criminal defendant to pay a victim of his or her crime. *See e.g.,* R.C. 2929.18(A). Or matters relating to the equitable remedy, as discussed infra.

{¶35} Interestingly, "restitutionary remedies and unjust enrichment are simply flip sides of the same coin" because "[t]he generative purpose of a restitutionary remedy is the prevention of unjust enrichment." *Alternatives Unlimited, Inc. v. New Baltimore City Bd. of Sch. Comm'rs*, 155 Md. App. 415, 454, 843 A.2d 252 (2004). *See also* 1 Restatement Restitution & Unjust Enrichment, 3d, Sec. 4, comment *b* (explaining that the first Restatement of Restitution, in 1937, adopted the view "that liabilities and remedies drawn from law on the one hand, and equity on the other, were best understood and described as components of a unified law of unjust enrichment"). This point is illustrated by the Supreme Court of Ohio's recognition that one must establish a threshold cause of

13

action for unjust enrichment before asserting an entitlement to restitution. Specifically, the Court has observed that entitlement to restitution requires a party to demonstrate, inter alia the "'retention of [a] benefit by [a] defendant under circumstances where it would be unjust to do so without payment ("*unjust enrichment*").'" (Emphasis added.) *Johnson*, 2005-Ohio-4985, at ¶ 20, quoting *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

{¶36} With these points in mind, Aurora Hill has incorrectly argued on appeal that its complaint set forth a cause of action in restitution. In equity, restitution is the remedy for unjust enrichment. That said, in general, "Ohio law does not permit recovery under the theory of unjust enrichment when an express contract covers the same subject matter." *Bunta v. Superior Vacupress, L.L.C.*, --- Ohio St.3d ----, 2022-Ohio-4363, --- N.E.3d ----, ¶ 36, citing *Hughes v Oberholtzer*, 162 Ohio St. 330, 335, 123 N.E.2d 393 (1954). ("It is generally agreed that there cannot be an express agreement and an implied contract for the same thing existing at the same time."). "The doctrine of unjust enrichment is limited when an express contract exists that concerns the same subject because ""the parties have fixed their contractual relationship in an express contract,"" and thus, "" there is no reason or necessity for the law to supply an implied contractual relationship between them."" (Citations omitted.) *Bunta* at ¶ 39.

{¶37} Here, the alleged violation of the limited partnership agreement by Argo is the basis for Aurora Hill's position. There was accordingly an express contract that addressed the alleged misdoings at the heart of the complaint. Accordingly, because Aurora Hill could not establish an unjust enrichment claim in this case, it is not entitled to the remedy of restitution as a matter of law.

14

{¶38} Aurora Hill's sole assignment of error lacks merit.

{¶39} For the reasons discussed in this opinion, the judgment of the Portage County Court of Common Pleas is affirmed.

MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.

15