[Cite as *OTARMA v. Miami Twp.*, 2025-Ohio-2897.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| OTARMA | : | |
| | : | C.A. No. 30362 |
| Appellees | : | |
| | : | Trial Court Case No. 2023-CV-04702 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| MIAMI TOWNSHIP, OHIO AND | : | Court) |
| DETECTIVE MATTHEW MOORE | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellants | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on August 15, 2025, the judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings.

Costs to be paid as follows: 50% by Appellees and 50% by Appellants.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
MICHAEL L. TUCKER, JUDGE

EPLEY, P.J., and HUFFMAN, J., concur.

**OPINION**
MONTGOMERY C.A. No. 30362


ANTHONY F. STRINGER, Attorney for Appellants
RICHARD M. GARNER, Attorney for Appellee, OTARMA


TUCKER, J.

{¶ 1} Defendants-Appellants Miami Township, Ohio, the Board of Trustees of Miami Township, Ohio ("the Board"), and Matthew Moore (collectively, "Miami Township") appeal from a judgment granting declaratory relief to Plaintiff-Appellee OTARMA, aka Ohio Township Association Risk Management Authority. In a single assignment of error, Miami Township contends the trial court erred in granting relief and entering judgment in OTARMA's favor in the amount of $528,782.95.

{¶ 2} According to Miami Township, the trial court erred in granting OTARMA's motion for declaratory relief under R.C. 2721.09 and in entering judgment in OTARMA's favor for attorney fees and costs it incurred in defending the township. After considering the matter, we conclude that OTARMA was entitled, as restitution, to recover attorney fees and costs it incurred in defending Miami Township, which it did pursuant to court orders beyond the point when any duty to defend existed. The trial court did err, however, in failing to hold a hearing on the necessity and reasonableness of the fees and costs. Accordingly, the trial court's judgment is affirmed in part, reversed in part, and remanded only for a hearing on the necessity and reasonableness of the fees and costs.

I. Facts and Course of Proceedings

{¶ 3} On September 6, 2023, OTARMA filed a complaint against Miami Township pursuant to R.C. 2721.09, seeking further relief based on a declaratory judgment that had been granted in a prior case, Montgomery C.P. No. 2017-CV-04749 ("the 2017 Action").

OTARMA's complaint asserted, correctly, that our court had concluded that OTARMA had had no duty to defend Miami Township after September 21, 2020, in a federal district court action brought by Roger Dean Gillispie against Miami Township. *See OTARMA v. Miami Twp.*, 2023-Ohio-733 (2d Dist.) (*OTARMA I*), issued on March 10, 2023.

{¶ 4} As relevant here, we note the factual background as expressed in *OTARMA I*:

OTARMA is a political-subdivision risk pool providing liability coverage to Ohio townships. In 2013, Roger Gillispie sued Miami Township in federal district court. His lawsuit included claims under 42 U.S.C. 1983 and state law. Gillispie alleged that he had been wrongfully arrested, prosecuted, and convicted in 1991 for a series of sexual assaults. He filed the lawsuit after his release from prison following a successful petition for a writ of habeas corpus. Miami Township tendered defense of the federal litigation to OTARMA, which accepted the defense under a reservation of rights.

While the federal lawsuit remained pending, OTARMA filed this declaratory-judgment action in October 2017. OTARMA sought a determination that it had no duty to defend or indemnify Miami Township. In May 2022, OTARMA filed a renewed motion for summary judgment on its complaint. Following briefing, the trial court sustained OTARMA's motion and overruled a competing summary-judgment motion filed by Miami Township. In a July 2022 decision and entry, the trial court noted that the remaining claims and parties in the federal lawsuit had been narrowed substantially. At the time of the trial court's ruling, the only remaining claims were counts one through five, which alleged violations of 42 U.S.C. 1983 by former Miami Township detective Matthew Scott Moore. Count one alleged that Moore had suppressed

exculpatory evidence. Count two alleged that he had participated in a suggestive eyewitness identification. Count three alleged that he had fabricated evidence. Count four alleged malicious prosecution. Count five alleged destruction of exculpatory evidence. The trial court noted that all other claims and parties had been dismissed.

With regard to the five remaining claims under 42 U.S.C. 1983, the trial court reviewed the OTARMA policy and found that it was "occurrence" based, meaning that Gillispie's claims accrued when Moore's allegedly wrongful acts took place. The trial court determined that "[a]ll of the acts constituting the critical elements" of the section 1983 claims "took place prior to Gillispie's conviction in 1991," and certainly "sometime before 1994[.]" Therefore, the trial court held that OTARMA's contract with Miami Township was not applicable, and OTARMA had no duty to defend or indemnify in the federal litigation.

*OTARMA I* at ¶ 4-6.

**{¶ 5}** After summary judgment was granted in the declaratory judgment action, Miami Township asked the trial court to stay execution of the judgment pending appeal and to require no supersedeas bond under Civ.R. 62(B). The reason for the request was that the federal court action was set for trial in November 2022, and OTARMA had notified Miami Township that it would discontinue funding in the federal action as of September 1, 2022. *See* 2017 Action, Defendant's Motion to Stay Enforcement of Declaratory Judgment

Pending Appeal (Aug. 26, 2022), p. 3-5.[1] The trial court then granted a stay pending appeal and ordered that no supersedeas bond would be required. The court further ordered OTARMA to continue funding defense costs in the Gillispie litigation pending appeal. Order and Entry Granting Motion to Stay Enforcement of Declaratory Judgment Pending Appeal (Aug. 31, 2022), p. 1-2. Shortly thereafter, OTARMA filed an emergency motion to vacate the stay because it had not been given an opportunity to respond. The court then overruled OTARMA's motion, leaving the stay of execution and funding order in place.

{¶ 6} As indicated, Miami Township then appealed to our court from the summary judgment decision. In October 2022, OTARMA filed an emergency request with our court seeking to vacate the stay order. We overruled the motion, finding that the relative harm to each party balanced in the township's favor. Specifically, while OTARMA could be deprived of the benefit of the trial court's ruling and would potentially be deprived of considerable resources by having to continue to pay, Miami Township could be harmed by being deprived of legal counsel only a few weeks before trial. Montgomery C.A. No. 29570, Order Overruling OTARMA's Motion to Vacate Stay Pending Appeal (Oct. 22, 2022) ("Appeals Stay Order"), p. 5-6. We therefore declined to disturb the trial court's order.

{¶ 7} When Gillispie's case was tried in federal court in November 2022 as scheduled, the remaining claims were "Gillispie's two remaining section 1983 claims against Moore (suppression of exculpatory material and suggestive identification)." *OTARMA I*, 2023-Ohio-

---

[1] For some time, our district has held that "we may take judicial notice of judicial opinions and public records accessible through the Internet." (Citations omitted.) *State ex rel. Harris v. Capizzi*, 2022-Ohio-3661, ¶ 18 (2d Dist.). We have also remarked that courts commonly "take judicial notice of publicly accessible online court dockets." *Id*. Therefore, when we refer to the 2017 Action and associated matters that are publicly available on the Montgomery County Clerk of Courts' website, we are properly taking judicial notice of these items.

733, at ¶ 15. After hearing the evidence, the jury found in Gillispie's favor and awarded damages of $45 million against Moore personally. *Id*. at ¶ 15, fn. 3.[2]

{¶ 8} In reviewing the trial court's decision with respect to the stay, we compared the allegations in Gillispie's amended complaint with the OTARMA policy language. We also considered the federal district court's jury instructions on the two claims that were tried in November 2022. *Id*. at ¶ 9-32. Regarding the nine causes of action, we found that "count seven, which states a claim for infliction of emotional distress, potentially or arguably alleges wrongful acts that occurred during one of the OTARMA policy periods. Therefore, with respect to count seven, OTARMA had a duty to defend Miami Township until September 2020, when count seven was dismissed in connection with the federal district court's summary-judgment rulings." *Id.* at ¶ 26. However, the rest of the claims necessarily alleged "wrongful acts that occurred prior to or at the time of [Gillispie's] trial and conviction, which was before the effective date of the OTARMA policies." *Id.* at ¶ 27. Based on our discussion, we found that OTARMA had no duty to indemnify Miami Township and that its obligation to defend Miami Township extended only to when summary judgment was rendered on September 21, 2020. *Id*. at ¶ 23, 25, fn.1, and 26.

{¶ 9} Our opinion in *OTARMA I* was issued on March 10, 2023. After a notice of our judgment was filed in the trial court, OTARMA filed a motion in the 2017 Action on September 6, 2023. The motion asked the court to lift the stay of execution of judgment and for an order compelling Miami Township to pay the attorney fees and expenses incurred for defense after

---

[2] Quite recently, the Sixth Circuit rejected the arguments of Miami Township and Moore regarding the jury verdict and other matters. *See Gillispie v. Miami Twp*., Ohio, 2025 WL 1276900 (6th Cir. May 2, 2025), affirming *Gillispie v. City of Miami Twp*., 2023 WL 11922094 (S.D. Ohio Nov. 8, 2023). As relevant here, the court affirmed the district court's decision "that Miami Township was liable to indemnify Detective Moore for the full amount of damages." *Id*. at *1.

the duty to defend no longer existed.

{¶ 10} On the same day, OTARMA also filed the complaint in the current case. The complaint was brought pursuant to R.C. 2721.09 for further relief based on the declaratory judgment in the 2017 Action. The complaint alleged that OTARMA was a political subdivision joint risk pool established under R.C. 2744.081, that Miami Township had tendered its defense to OTARMA in the Gillispie litigation, and that OTARMA had accepted the defense but had sent reservation of rights letters to Miami Township, which the township had admitted receiving.

{¶ 11} According to the complaint, between September 21, 2020, and the date the complaint was filed, OTARMA had incurred a total of $477,171.17 in defense expenses for Miami Township and was entitled to restitution of that amount, additional expenses incurred while awaiting the trial court's ultimate judgment, and interest. Attached to the complaint was a March 14, 2014 reservation of rights letter sent to Moore, which OTARMA alleged was identical to others sent to all Miami Township defendants. OTARMA also attached the affidavit of Bradley Tucker, who attested to the expenses OTARMA had incurred.

{¶ 12} On November 2, 2023, Miami Township and the Board filed an answer and asserted affirmative defenses, such as OTARMA's failure to timely notify them of its intent to recoup or reserve rights and OTARMA's lack of a legal right to restitution or recoupment of defense costs. Moore filed a separate answer the same day, alleging the same defenses.

{¶ 13} In late November 2023, OTARMA filed motions in both the 2017 Action and the current case, asking for consolidation of the actions. Before a decision was made on that issue, the court in the 2017 Action lifted the stay of execution. However, the court also found that in order to obtain an order compelling payment of defense costs, OTARMA was required to file a complaint. Because OTARMA had already done so, the court found that the matter

would be litigated in the 2023 case, i.e., the current action. *See* 2017 Action, Decision and Entry Granting Plaintiff's Motion for Order Lifting Stay of Execution and Striking Plaintiff's Motion for Order Compelling Payment of Costs (Dec. 4, 2023). OTARMA appealed that decision, but we dismissed the appeal because the order was not a final appealable order. Specifically, while the judge struck OTARMA's motion in the 2017 Action, OTARMA had filed the complaint in the current case, which sought identical relief. Montgomery C.A. No. 30003 (Feb. 7, 2024), p. 1-2.

{¶ 14} Meanwhile, in the current case, Miami Township asked to file a third-party complaint against First Mercury Syndicate, Inc. ("First Mercury"). According to the township, First Mercury had a duty to defend and indemnify the township and Moore against the Gillispie claims, based on the township's alleged insurance coverage between 1992 and 1995 with First Mercury. In addition, the township alleged that First Mercury would be required to indemnify it if OTARMA recovered a judgment against the township. The court allowed the third-party complaint to be filed, and First Mercury then filed an answer in March 2024.

{¶ 15} On May 17, 2024, OTARMA moved the court for an order requiring Miami Township to show cause why it should not be ordered to pay OTARMA restitution or reimbursement for providing a defense in the Gillispie case. OTARMA indicated the order was being sought pursuant to R.C. 2721.09 and that the amount then owed was $483,905.87, with interest that had accrued and would continue to accrue. On May 31, Miami Township responded to the motion and included a request that discovery be allowed; this was followed by OTARMA's reply memorandum on June 20. The trial court then scheduled oral argument on the show cause order for August 2. Following oral argument, the parties filed post-hearing briefs on September 27, 2024.

{¶ 16} Subsequently, the trial court found that it lacked authority to deviate from the mandates of the prior declaratory judgment and further found that no discovery would be permitted as the court was required to follow the statutory procedure in R.C. 2721.09. The court therefore ordered Miami Township to show cause why an order should not be issued requiring it to reimburse OTARMA for expenses incurred when OTARMA had no duty to defend the township. Decision, Entry and Order (Oct. 10, 2024).

{¶ 17} After Miami Township failed to respond to the show cause order, OTARMA filed a proposed schedule on November 11, and the court adopted it. The court ordered as follows: Miami Township must respond to the show cause order by November 14; OTARMA could reply by December 13; and the "The Show Cause Order" should be "submitted to the Court on December 13, 2024." After the parties submitted their memoranda, the court issued an order on December 16 granting OTARMA's motion for declaratory judgment relief. The court therefore ordered Miami Township to pay OTARMA the amount it had requested in its latest memorandum, which outlined the interest and principal that would be due on December 16, 2024. That amount totaled $528,782.95, which included $483,905.67 in litigation expenses and interest of $44,877.28. *See* Entry Granting Plaintiff OTARMA's Motion for Declaratory Relief Pursuant to R.C. § 2721.09 (Dec. 16, 2024) ("2721.09 Order").

{¶ 18} On December 23, OTARMA asked the court to enter a Civ.R. 54(B) certification concerning the court's December 16, 2024 entry granting declaratory judgment to OTARMA. Miami Township was served electronically with this motion on December 23, but it did not respond. The trial court then filed a Civ.R. 54(B) certification finding no just reason for "delay of Entry of Final Judgment of the Court's December 16, 2024 Entry Granting Plaintiff OTARMA's Motion for Declaratory Relief pursuant to R.C. § 2721.09." Entry and Order, Pursuant to Civ. R. 54(B), Determining There Is No Just Reason for Delay

of an Entry of Final Judgment in Favor of Plaintiff (Jan. 14, 2025) ("Final Judgment"), p. 1.

{¶ 19} On January 17, 2025, Miami Township filed a notice of appeal from the December 16, 2024 entry granting OTARMA's motion for declaratory relief. Miami Township also attached a copy of the 2721.09 Order as Exhibit A to the notice of appeal.

## II. Alleged Error in Granting Motion for Further Declaratory Relief

{¶ 20} Miami Township's sole assignment of error states that:

The Trial Court Erred by Granting Appellee's Motion for Further Declaratory Relief Pursuant to R.C. § 2721.09 and Entering Judgment in Favor of Appellee in the Amount of $528,782.95.

{¶ 21} Under this assignment of error, Miami Township makes several arguments. We will address these arguments out of order, as needed.

### A. Alleged Error in Granting a Motion That Was Not Filed

{¶ 22} The township's first argument is that the trial court granted a motion for declaratory relief that OTARMA never filed. This is incorrect.

{¶ 23} The current action was brought pursuant to R.C. 2721.09, which provides that:

Subject to section 2721.16 of the Revised Code, whenever necessary or proper, a court of record may grant further relief based on a declaratory judgment or decree previously granted under this chapter. The application for the further relief shall be by a complaint filed in a court of record with jurisdiction to grant the further relief. If the application is sufficient, the court, on reasonable notice, shall require any adverse party whose rights have been adjudicated by the declaratory judgment or decree to show cause why the further relief should not be granted forthwith.

{¶ 24} R.C. 2721.16 does not apply here. It was added as part of 1999 amendments

and was designed to require adherence to the American Rule and restrict courts' ability to award attorney fees. *See MacDonald v. Webb Ins. Agency, Inc.*, 2015-Ohio-4623, ¶ 31 (3d Dist.). Previously, in *Motorists Mut. Ins. Co. v. Brandenburg*, 72 Ohio St.3d 157 (1995), the Supreme Court of Ohio had taken a broad approach to awarding attorney fees under R.C. 2721.09. R.C. 2721.16 was enacted to change this. In *Brandenburg*, the court held that attorney fees could be awarded even if insurers did not act in bad faith and even if parties did not prevail in the underlying declaratory judgment action. *Id*. at 160. Here, however, the trial court did not award OTARMA attorney fees for bringing the underlying declaratory judgment action in 2017 or for the complaint it brought under R.C. 2721.09. The court's judgment was only for litigation defense costs OTARMA had to pay on Miami Township's behalf after a duty to defend the township defendants no longer existed.

{¶ 25} Consistent with R.C. 2721.09, OTARMA filed a complaint in the trial court seeking further relief based on the declaratory judgment it had received as a result of the 2017 Action. Notably, R.C. 2721.09 does not even require a motion by the party seeking relief. Based on the statute's wording, trial courts can review complaints and issue show cause orders if they deem applications sufficient. Nonetheless, OTARMA did file a motion in May 2024 asking the court to issue a show cause order. Consequently, Miami Township's initial argument lacks merit.

B. Alleged Error in Granting a Declaratory Judgment That Was Not Requested

{¶ 26} Miami Township's second argument is equally unavailing. According to the township, the trial court erred by granting a declaratory judgment that OTARMA never requested. However, the court's judgment entry is captioned "Entry Granting Plaintiff OTARMA's Motion for Declaratory Relief Pursuant to R.C. § 2721.09." Although the court stated in the body of the entry that it was granting a declaratory judgment, it followed that

statement by again saying that the judgment was being made pursuant to R.C. 2721.09. The court's intent was clear, which was to grant the further relief this statute allows.

## C. Nature of the Proceeding

{¶ 27} Miami Township also argues this case was not a "special proceeding" and that OTARMA improperly attempted to monetize a declaratory judgment to deprive the township of the legal rights to which it would have been entitled in a civil action, including a jury trial, use of discovery, and an adversarial factual proceeding on questions of implied contract or unjust enrichment. Appellants' Brief, p. 10. Again, we disagree.

{¶ 28} Contrary to Miami Township's assertions, complaints for relief under R.C. 2721.09 are special proceedings. The law is settled that "[a] declaratory judgment action is a special proceeding pursuant to R.C. 2505.02. . . ." *Gen. Acc. Ins. Co. v. Ins. Co. of N. America*, 44 Ohio St.3d 17, 22 (1989). This is because "[d]eclaratory judgment actions are a special remedy not available at common law or at equity." *Id*.

{¶ 29} Civ.R.1(A) provides that the civil rules "prescribe the procedure to be followed in all courts of this state in the exercise of civil jurisdiction at law or in equity, with the exceptions stated in division (C) of this rule." As relevant here, Civ.R. 1(C) says that the civil "rules, to the extent that they would by their nature be clearly inapplicable, shall not apply to procedure . . . (8) in all other special statutory proceedings; provided, that where any statute provides for procedure by a general or specific reference to all the statutes governing procedure in civil actions such procedure shall be in accordance with these rules."

{¶ 30} "R.C. Chap. 2721, 'Declaratory Judgments,' provides a complete statutory scheme for obtaining declaratory judgment relief." *Gen. Acc. Ins. Co*. at 22. R.C. 2721.10 does say that "[w]hen an action or proceeding in which declaratory relief is sought under this chapter involves the determination of an issue of fact, that issue may be tried and determined

in the same manner as issues of fact are tried and determined in other civil actions in the court in which the action or proceeding is pending." Courts have held that "where a declaratory judgment raises a question of fact, and the parties have made a valid jury demand, it is reversible error for the trial court to deny them a trial by jury." *Lewis v. Motorists Ins. Cos.*, 96 Ohio App.3d 575, 587 (8th Dist. 1994), citing *Solon Chamber of Commerce v. Women's Gen. Hosp.*, 81 Ohio App.3d 687 (8th Dist. 1992). No jury demand was made here.

{¶ 31} Nonetheless, as a general rule, if factual issues exist, a party could be entitled to discovery. However, while the township argues it should have been allowed to conduct discovery, it was not necessarily entitled to do so. As noted, R.C. 2721.09 provides an expedited procedure for obtaining relief by using show cause orders. The issues here were legal in nature, i.e., whether OTARMA was entitled to reimbursement. Miami Township did not allege bad faith on OTARMA's part, nor did it contend that the counsel OTARMA hired had performed poorly. " 'In Ohio, courts have traditionally permitted discovery of an insurer's claims files only in instances where bad faith is alleged or where a prevailing party seeks prejudgment interest.' " *Cherryhill Mgt., Inc. v. Branham*, 2020-Ohio-596, ¶ 18 (2d Dist.), quoting *Kraus v. Maurer*, 138 Ohio App.3d 163 (8th Dist. 2000). Moreover, as OTARMA mentioned numerous times in the trial court, the township had access to all the bills that had been paid. Therefore, there was no need for discovery.

{¶ 32} On the other hand, we find error in the trial court's failure to allow a hearing on the reasonableness of the fees. OTARMA attached Tucker's affidavit to its complaint. Tucker was the director of operations and client services for the Public Entity Risk Services of Ohio ("PERSO"), which provided claims services to OTARMA. Complaint, Tucker Aff. (Ex. B), p. 1. Tucker also attached a spreadsheet summarizing attorney invoices dated from November 1, 2020, through August 31, 2023, and the amounts OTARMA paid for the township's

defense. *Id*. at p. 2 and attached Ex. A. When OTARMA filed its motion asking the court to issue a show cause order, it again attached Tucker's affidavit and the spreadsheet. According to the latest affidavit, OTARMA had paid defense expenses of $82,514.76 from September 21, 2020, to July 29, 2022, and $394,656.41 from July 29, 2022, to May 2023. These amounts included expenses for Miami Township's counsel and a separate law firm engaged to represent Moore. According to Tucker, the total was $483,905.67. Tucker Aff. (May 17, 2024), p. 3-4.[3]

{¶ 33} In response to OTARMA's motion for a show cause order, Miami Township asserted that it had the right to conduct discovery and to present expert testimony as needed. Implicitly, then, the township wanted the court to hold a hearing on these points. The township also asked for discovery during oral argument on the show cause motion. Transcript of Proceedings (Show Cause/Oral Argument), p. 11-12 and 13-14. As noted, in October 2024, the trial court denied discovery. The court thereafter issued a cursory order granting relief in the updated amount of fees and interest OTARMA indicated would be due as of December 16, 2024, i.e., $528,782.95. That included $483,905.67 plus $44,877.44 in interest since September 6, 2023 (the date the complaint under R.C. 2721.09 was filed). *See* Plaintiff's Reply Memorandum in Opposition to Miami Township Defendants' Response to the October 10, 2024 Show Cause Order (Dec. 13, 2024), p. 17-19; *see also* 2721.09 Order.

{¶ 34} In another case brought under R.C. 2721.09, we reversed a trial court

---

[3] Adding $82,514.76 and $395,656.41 equals only $477.171.17. However, the invoices attached to Tucker's May 2024 affidavit as Ex. A showed a combined cost total of $86,265.17 and a combined legal fees total of $397,640.50. These equal the $483,905.67 amount. As a result, we assume that figure is correct. We also note Miami Township did not dispute the $483,905.67 amount either in the trial court or on appeal.

judgment and remanded for a hearing on attorney fees. *See Am. Justice Ins. Reciprocal v. Westfield Ins. Co.*, 1996 WL 631025 (2d Dist. Sept. 27, 1996). There, the plaintiffs had obtained a declaratory judgment finding that Westfield Insurance Company had a duty to defend them in a federal court action. *Id*. at *1. Plaintiffs then filed an application under R.C. 2721.09, and the trial court ordered the insurer to pay previously incurred attorney fees and defense costs and additional fees and costs until it fulfilled its obligation to defend. *Id*. at *2-3. On appeal, the insurer claimed the trial court had violated its due process rights by denying it a hearing on the attorney fees and costs. *Id*. at *2. We noted the application was supported only by two affidavits from a claim specialist and the plaintiffs' trial attorney, and no hearing had been held as to reasonableness of the fees. *Id*. at *3.

{¶ 35} While considering this matter, we remarked that:

In support of the alleged error, Westfield dwells at some length upon "due process rights," but the order of the trial court, which has some characteristics of a default judgment, does not appear to be impressed with any constitutional implications. Manifestly, the court was not without authority to enforce its previous orders in any reasonable manner. However, in the face of an express request for a hearing, and in the absence of any evidence, other than the affidavits of Mr. Libby and Mr. Bartlett, as to the necessity for and reasonableness of the services, the trial court erred in refusing to grant a hearing for that limited purpose. In other words, the application submitted by American Justice, while subject to proof at a hearing, was without adequate evidentiary support when granted.

*Id.* at *3.

{¶ 36} Consistent with the above decision, the trial court should have held a hearing

on the reasonableness of the attorney fees.

### D. Alleged Procedural Issues

{¶ 37} Another argument of the township is that OTARMA was precluded from asserting a recoupment claim because the declaratory judgment was silent about money damages and recoupment. Additionally, the township argues that OTARMA failed to plead claims for unjust enrichment, restitution, or implied-contract in the 2017 Action. However, OTARMA was not required to include these claims; the prior action was based on insurance coverage issues.

{¶ 38} Concerning the issue of money damages, some history is relevant. Initially, the Ohio legislature conferred declaratory judgment jurisdiction only on probate courts. It then extended this jurisdiction to " 'courts of record within their respective jurisdictions' " through the Uniform Declaratory Judgments Act, which was effective in 1933. *Radaszewski v. Keating*, 141 Ohio St. 489, 495 (1943). The Act was codified in G.C. 12102-1 to 12102-16. *Id*. At that time, G.C. 12102-08 provided that: "Further relief based on a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief." *Am. Life & Acc. Ins. Co. of Ky. v. Jones*, 152 Ohio St. 287, 297 (1949).

{¶ 39} In 1953, the General Code statutes were revised and consolidated into the Revised Code. *See* R.C. 1.01. At that time, G.C. 12102-08 became R.C. 2721.09, and the wording remained essentially the same. *Compare* H.B. 58, 1999 Ohio Laws 36, eff. Sept. 24, 1999, with the language quoted in *Jones* at 297. The 1999 amendment changed the wording from "petition" to "complaint" and added a reference to R.C. 2721.16, which was designed to require courts to adhere to the American Rule on recovery of attorney fees. Otherwise, R.C. 2721.09 remained the same. No further amendment occurred after 1999.

{¶ 40} In *Jones*, an insurer had filed a declaratory judgment action against the Administrator of the Bureau of Unemployment Compensation ("BUC"), seeking a declaration on several questions. These included: whether the insurer had to contribute to the Ohio unemployment compensation fund for compensation it paid to its agents; whether the insurer should be repaid for amounts it had contributed to the fund; and whether BUC should be enjoined from collecting further contributions from the insurer. *Jones* at 288-289. The trial court held that the insurer was not liable to make contributions and "incidentally" found the insurer was entitled to a refund. *Id*. at 292. After the court of appeals agreed, BUC appealed to the Supreme Court of Ohio. Among other things, BUC claimed the declaratory judgment action was not permitted because the insurer had an "equally serviceable" and exclusive administrative remedy of seeking an adjustment from BUC. *Id*. at 292 and 294-295.

{¶ 41} However, the Supreme Court of Ohio found otherwise. The court stressed that while other jurisdictions might have a different view, "it is settled in Ohio that an action for a declaratory judgment may be alternative to other remedies in those cases in which the court, in the exercise of sound discretion, finds that the action is within the spirit of the Uniform Declaratory Judgments Act, Gen.Code, § 12102-1 et seq., that a real controversy between adverse parties exists which is justiciable in character, and that speedy relief is necessary to the preservation of rights which may be otherwise impaired or lost." *Id.* at 295-296, citing *Schaefer v. First Natl. Bank of Findlay,* 134 Ohio St. 511 (1938) and *Radaszewski*, 141 Ohio St. 489.

{¶ 42} The court further remarked that if the action had been for money only, it would not have been within the spirit of the Act. However, based on then-existing G.C. 12102-8, "as incidental to a declaration of insurance company's rights the court was justified in permitting a recovery of the contributions concerning which administrator had made no

order." *Id*. at 297. In addition, the court commented that, "It seems obvious that in the interest of speedy justice it was proper that the court, having determined that insurance company was not obligated to pay contributions in respect to its agents, should then grant the incidental relief of awarding the wrongfully paid contributions to insurance company instead of compelling it to resort to the alternative remedy under the statutes." *Id*.

{¶ 43} As noted, the current statute, R.C. 2721.09, has not changed in any relevant way since initially being enacted in 1933. Thus, there is no barrier to awarding a money judgment as incidental relief once a party has been granted a declaratory judgment. Pertinent to this point, our district considered a case in which a teacher had filed a declaratory judgment action against a school board in order to determine her rights under a special teaching contract. Specifically, the teacher originally had a limited contract for extended service days that the board later extended to a continuing contract. After following that contract for some time, the board then reduced the teacher's paid service days. *Hara v. Montgomery Cty. Joint Vocational School Dist*., 1994 WL 603196, *1 (2d Dist. Nov. 4, 1994). The trial court found in the teacher's favor and reserved jurisdiction to award further relief under R.C. 2721.09. After the teacher filed a petition under that statute, the court awarded her more than $30,000. *Id*. at *1 and 5.

{¶ 44} Among other things, the board claimed on appeal that the teacher's claim was barred under Civ.R 54(C), which at that time provided that " 'a demand for judgment which seeks a judgment for money shall limit the claimant to the sum claimed in the demand unless he amends his demand not later than seven days before the commencement of the trial.' " *Id*, at *5, quoting then-existing Civ.R. 54(C). According to the board, the teacher's "failure to request any specific sum of money in her complaint barred her recovery." *Id*. We disagreed, noting that "the trial court, after declaring the rights and liabilities of the parties, permitted

Hara to file a petition for further relief under R.C. 2721.09, which states that 'whenever necessary or proper, further relief based upon a declaratory judgment or decree previously granted may be given.' Moreover, the record discloses that Hara specified the periods at issue, as well as the applicable rates of pay, thus rendering determinable the amount sought under her contracts." *Id*. Likewise, OTARMA properly filed for additional relief under R.C. 2721.09, and the amount for which it claimed reimbursement was readily determinable.

{¶ 45} In *Hara*, we did note that the teacher had requested back pay in her complaint. *Id.* at *5. OTARMA's complaint in the 2017 Action was less specific, asking for a declaration of rights concerning coverage to defend and indemnify Miami Township as well as "all other just and equitable relief to which the Plaintiff may be entitled including costs and attorney fees expended in this action." 2017 Action, Complaint, p. 11. Nonetheless, that does not impact the result here, as Civ.R. 54(C) was later amended and now has different language. The rule now states that "[a] judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Civ.R. 54(C) further adds that "[e]xcept as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded the relief in the pleadings*." (Emphasis added.)

{¶ 46} Civ.R. 54 also does not limit the kind of judgments to which it applies, other than mentioning default judgments. In this context, Civ.R. 54(A) defines a "judgment" as used in the civil rules as "a written entry ordering or declining to order a form of relief, signed by a judge, and journalized on the docket of the court." Consequently, OTARMA'S failure to specifically mention recoupment in the declaratory judgment complaint was not problematic, and the trial court did not err in awarding money damages as further relief under R.C. 2721.09.

{¶ 47} Finally, in the R.C. 2721.09 action involved in *Am. Justice*, the trial court granted the same type of money judgment for defense expenses as is at issue here. *See Am. Justice Ins. Reciprocal*, 1996 WL 631025 at *2 (2d Dist.). It is clear (and logical) that once a declaratory judgment has been granted, a court may render further relief, which includes a money judgment.

{¶ 48} Even if this were otherwise, the township's argument is unconvincing because the parties were well aware of the possibility of recoupment during the 2017 declaratory judgment proceedings, which continued for nearly five years after the complaint was filed in October 2017. In that action, the court originally set a July 2018 deadline for OTARMA's summary judgment motion. However, the court vacated that deadline after another insurance company, National Casualty Co.("National"), sought to intervene and was given permission to do so. OTARMA then filed its first summary judgment motion on the coverage issue in November 2018; National filed its own such motion in January 2019, followed by Miami Township's summary judgment motion in March 2019. The court then overruled all pending motions based on its belief that factual issues existed concerning when probable cause disappeared for purposes of Gillispie's malicious prosecution claims. The court also ordered a stay of further proceedings pending completion of the Gillispie lawsuit. 2017 Action, Decision and Entry Overruling Motions for Summary Judgment, and Order of Stay of Future Proceedings Pending Completion of Underlying Lawsuit (July 25, 2019).

{¶ 49} In October 2019, OTARMA filed a motion for reconsideration and a renewed motion for summary judgment. At this point, OTARMA argued that the court, by refusing to grant or deny a declaratory judgment and by issuing a stay, was denying OTARMA a remedy in contradiction of the purpose of declaratory judgments, which is to provide a speedy resolution. However, the court denied reconsideration and refused to lift the stay. At that

time, the court did grant summary judgment concerning coverage for claims based on infliction of emotional distress and spoliation of evidence. The court found OTARMA and National were not required to provide a defense or indemnify Miami Township on those claims because the events underlying those causes of action occurred outside the policy periods. 2017 Action, Decision and Entry Overruling Plaintiffs' Renewed Motion for Summary Judgment and to Lift Stay upon Reconsideration, in Part (Apr. 3, 2020), p. 1-2.

{¶ 50} In addressing OTARMA's complaint about the lack of a remedy, the court stated:

> The imposition of a stay here does not deny OTARMA and National Casualty a remedy. The parties could well receive a determination that they have no obligation to indemnify. If it is determined in the underlying civil action that probable cause disappeared in the pre-1994 time period then this court would declare no obligation to indemnify the Miami Township Defendants. Concomitant with that the court would declare that Plaintiff had no duty to defend the Miami Township Defendants. *The Plaintiff would then be entitled to reimbursement of their expenditures for defense from the Miami Township Defendants. The Plaintiff has not established here that they have no right to seek reimbursement of their expenditures for defense under the circumstance where it was determined the Miami Township Defendants prosecuted despite probable cause expiring in the pre-1994 time frame.*

(Emphasis added.) *Id*. at p. 5.

{¶ 51} These statements by the trial court provide context to the township's claim that nothing in the trial court's 2022 stay order "allowed or even implied that OTARMA was permitted to assert any quasi-contractual rights or reimbursement or recoupment of the

expended defense costs." Appellants' Brief at p. 15. It is true that the court did not comment on reimbursement either in its August 2022 order granting a stay of execution or in its September 2022 order denying reconsideration of the stay (both of which were very brief entries). However, the court certainly did discuss the matter in April 2020 when it denied OTARMA's request to lift the existing stay of any ruling on OTARMA's summary judgment motion.

{¶ 52} Almost two years later, in January 2022, OTARMA again asked the trial court to lift the stay of any ruling on declaratory judgment. This request was based on new developments in the federal action, and OTARMA attached copies of the relevant decisions in that case. The court then lifted the stay on March 31, 2022, finding that the federal decisions contained enough information to decide the probable cause issue. Shortly thereafter, OTARMA filed a renewed summary judgment motion in May 2022, and Miami Township filed its own cross-motion for summary judgment in June.

{¶ 53} At that point, the court ruled on OTARMA's summary judgment motion. The court found that OTARMA had no duty to either defend or indemnify Miami Township on any claims in the first amended complaint filed in the federal case. See 2017 Action, Decision and Entry Granting Plaintiff's Renewed Motion for Summary Judgment Requesting Declaratory Judgment (July 29, 2022), p. 10, citing *Roger Gillispie v. Miami Twp.*, Case No. 2:13-CV-416 (S.D. Ohio). The first amended complaint in that case was filed on January 17, 2014. *See OTARMA I,* 2023-Ohio-733, at ¶ 13, fn. 2. The trial court's summary decision also noted that Gillispie had voluntarily dismissed the claim for infliction of emotional distress

against all defendants. *Id.* at p. 3.[4]

**{¶ 54}** In contrast to its current position, when Miami Township asked for a stay of execution in the 2017 Action, it argued that the declaratory judgment finding no coverage was effectively a "money judgment" because it would require the township to pay defense costs for the Gillispie litigation. 2017 Action, Defendants' Motion to Stay Enforcement of Declaratory Judgment Pending Appeal (Aug. 26, 2022), p. 5, fn. 3. As we said, it was clear that after obtaining a favorable declaratory judgment on the coverage issue, OTARMA would be seeking reimbursement or recoupment of its defense costs. It did so appropriately by seeking further relief under R.C. 2721.09. Contrary to the township's claim, OTARMA was not trying to circumvent the requirements of a civil action; it was following a statutory procedure. Accordingly, this argument has no merit.

E. Whether OTARMA Had a Right to Recoup Litigation Costs

**{¶ 55}** Another argument by the township (taken out of order) is that OTARMA had no right to recoup defense costs because the insurance contract, which governs, failed to provide for reimbursement or recoupment. The township then asserts that Ohio law does not let OTARMA recoup defense costs under any quasi-contractual theories. It also claims in this context that OTARMA was precluded from obtaining any recovery because it failed to assert a reservation of rights after the court in the 2017 Action ordered OTARMA to continue paying for the township's defense. Before considering these matters, we will discuss some

---

[4] From reviewing the federal district court decision in question, it appears that the court granted summary judgment on the emotional distress claim, while noting that Gillispie had said he would voluntarily dismiss this claim. However, Gillispie had not done so at the time of the court's decision. The court's decision to grant summary judgment was based on Gillispie's statements about dismissal and the fact that Gillispie had not responded substantively to the summary judgment motions on the emotional distress claim. *See Gillispie v. City of Miami Twp.*, 2020 WL 5629677, *25 and 38 (S.D. Ohio Sept. 21, 2020).

pertinent facts.

## 1. Factual Background

{¶ 56} OTARMA is a local governmental joint self-insurance pool authorized by R.C. 2744.081. *Thom v. Perkins Twp.*, 2012-Ohio-1568, ¶ 25 (6th Dist.); *State ex rel. Ames v. Baker, Dublikar, Beck, Wiley & Mathews*, 2022-Ohio-3990, ¶ 2. OTARMA allows townships to protect themselves against risks of loss by contributing to the joint self-insurance pool. *Thom* at ¶ 30. Under R.C. 2744.081(E)(2), "A joint self-insurance pool is not an insurance company. Its operation does not constitute doing an insurance business and is not subject to the insurance laws of this state." *Thorn* at ¶ 29. As a result, OTARMA was not an insurer. Nonetheless, because a joint self-insurance pool's structure is analogous to that of an insurance company, courts may apply "well-settled principles of law" when deciding coverage issues. *Ohio Govt. Risk Mgt. Plan v. Cty. Risk Sharing Auth., Inc.*, 130 Ohio App.3d 174, 180 (6th Dist. 1998).

{¶ 57} As indicated, Gillispie's federal lawsuit was filed in 2013, and an amended complaint was filed in January 2014. "Two OTARMA liability-coverage policies [were] at issue here. One is identified as the 'Governmental Liability Coverage' (GLC) agreement, and the other is identified as the Legal Defense and Claim Payment Agreement ('LDCPA'). The GLC policy was in effect from July 24, 1996, to July 24, 1998. The LDCPA policy was in effect from July 24, 1998, through the filing of Gillispie's federal lawsuit." *OTARMA I*, 2023-Ohio-733, at ¶ 10.

{¶ 58} The township became a member of OTARMA in July 1996 and signed an "Intergovernmental Contract" at that time. *See* 2017 Action, Kelly Hammond Affidavit Filed in Support of OTARMA Motion for Summary Judgment (Nov. 7, 2018), ¶ 7 ("Hammond Aff."), and Hammond Aff. Ex. 1. The GLC policy was in effect until revised in 1998 as the LDCPA.

*Id.* at ¶ 12-13.

**{¶ 59}** Under the LDCPA policy, OTARMA "provided coverage for damages resulting from an 'injury' caused by an 'occurrence' that took place during the policy period. The LDCPA policy defined 'injury' to include harm arising out of, inter alia, improper detention, false arrest, malicious prosecution, and violations of rights protected by civil-rights statutes. . . . The policy defined a 'wrongful act' as 'any actual or alleged error, misstatement, act of omission, neglect or breach of duty, including malfeasance, misfeasance or nonfeasance, but excluding willful misconduct, criminal conduct, fraud or malicious acts.' " *OTARMA I* at ¶ 12.

**{¶ 60}** Under Section III – Benefits, Part D (Claim and Defense Expenses), OTARMA agreed in the LDCPA, with respect to liability for third party claims, as follows:

1. **we** will pay all expenses that **we** incur in payment of any claim; and

2. **we** have the right and duty to defend the **member** in any **suit** seeking such **damages**, even if the allegations of the **claim** are groundless, false, or fraudulent. **We** will pay all expenses that **we** incur in such defense and any costs taxed against the **member** in the **suit**. However, **we** have no duty to defend the **member** against any **suit** seeking **damages** for **injury** which is not covered by this **Agreement**.

(Emphasis in original.) LDCPA at p. 5, attached as Ex. 1(B) to OTARMA Notice of Filing Certified Copies of Pleadings, Motions, and Entries in *OTARMA v. Miami Township*, No. 2023 CV 04702 and Request to Take Judicial Notice (May 17, 2024) ("Notice").

**{¶ 61}** The LDCPA did not provide for reimbursement or recoupment if OTARMA paid for Miami Township's defense or indemnity and a court later found the township was not entitled to coverage.

{¶ 62} The GCL policy contained similar provisions on the right and duty to defend suits brought against members even if the suit's allegations were "groundless, false, or fraudulent." Ex. 5 attached to Hammond Aff., Governmental Liability Coverage Part, Section V, Coverages, p.1; Law Enforcement Liability Coverage Part, Section V, Coverages, p. 1. Like the LDCPA policy, the GCL policy lacked provisions for reimbursement or recoupment.

{¶ 63} On February 21, 2014, OTARMA sent a letter by certified mail to the administrator of Miami Township. The letter denied coverage for the township and its police officers in connection with the Gillispie lawsuit. *See* Ex. 1(D) attached to the Notice. OTARMA also sent individual denial letters to the involved officers. There is no dispute about the fact that the township and its officers received these letters.

{¶ 64} After outlining multiple reasons for declining coverage, the letter stated that:

IV. OTARMA Will Provide a Defense to the Miami Township Defendants Subject to the Pool's Reservation of its Rights.

At this time, OTARMA agrees to provide a defense to the Miami Township Defendants. However, such a defense is being provided subject to OTARMA's Reservation of Rights.

The Pool reserves the right to review any further facts, pleadings, rulings, motions or amendments to the pleadings or discovery in the lawsuit filed by Mr. Gillispie and make a separate determination on whether a defense or indemnification may be provided.

Further, OTARMA reserves all its rights, including without limitation, the right to assert any and all available defenses; the right to file a declaratory judgment action; the right to terminate the defense of the present action if it is determined that the claims are not covered; the right to refuse to defend and

indemnify the Member defendants for those claims that are not covered; and all its other rights under the LDCPA and applicable law. OTARMA also reserves the right to recoup from the Member, the fees and costs it expended in defending a Member against claims for which it is determined that no coverage is owed.

. . . .

In view of the fact that OTARMA is reserving its rights to provide a defense or indemnity for the claims made in Gillispie v Miami Township, and because there may be no defense or indemnity for some or all of Plaintiff's claims, you may wish to retain an attorney of your own choice and at your expense to appear in the matter and associate with the attorney who has been selected as defense counsel by the Pool.

Ex. 1(D) at p. 12. After making these statements, OTARMA provided the name of the defense counsel it had selected for all Miami Township defendants, other than one defendant (Mr. DiPietro), who was being given separate counsel. *Id*.

**{¶ 65}** OTARMA sent a similar denial letter to Moore on March 14, 2014. *See* Ex. 1(E) attached to the Notice. OTARMA also supplemented the reservation of rights in 2017. Notice, Ex. 4, p. 3; *see also* August 2022 letter from OTARMA's counsel to Miami Township's declaratory judgment counsel (which is attached to Ex. 4 as Ex. 1), p. 2.

2. Whether Renotification of Reservation of Rights Was Required

**{¶ 66}** Miami Township contends OTARMA was required to again notify it of a reservation of rights after the court ordered OTARMA to continue paying for the township's defense. The township refers to its belief that OTARMA should have further reserved its rights after the trial court's 2022 stay of execution and order for OTARMA to continue to pay

for defense costs pending appeal. This was followed shortly thereafter by our own order, which refused to vacate the stay. *See* Appellants' Brief at p. 12 and 15.

**{¶ 67}** In making this argument, the township relies on *Chiquita Brands Internatl., Inc. v. Natl. Union Fire Ins. Co. of Pittsburgh Pa*, 2015-Ohio-5477 (1st Dist.) ("*Chiquita II*"). The *Chiquita* case involved two appeals. In the first appeal (which was decided in 2013), "the trial court journalized an order declaring that an insurer, National Union, owed Chiquita a duty to defend. After this ruling, National Union began funding the defense. Each defense payment, except one, was accompanied by a letter stating, in pertinent part, that National Union was reserving a right to seek reimbursement of the payments." *Id*. at ¶ 2. On appeal, the First District Court of Appeals found no duty to defend, reversed the judgment, and ordered the trial court to consider on remand whether the insurer could recoup payments it had made after the initial order finding a duty to defend. *Id*. at ¶ 3, discussing *Chiquita Brands Internatl., Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh Pa*, 2013-Ohio-759 (1st Dist.) ("*Chiquita I*"). As in the case before us, the insurer's policy did not address recoupment. *Id*.

**{¶ 68}** On remand, the insurer moved for restitution or alternatively, reimbursement, and the trial court granted it based on "an implied-in-fact contractual right to reimbursement created by the cover letters that had accompanied" the payments. *Chiquita II* at ¶ 4. When the insured appealed, the First District disagreed that the letters which accompanied the payments had created an implied contract, because the insured's (Chiquita's) position had always been that payments were due under the policy, and therefore it had not accepted the terms in these letters. *Id*. at ¶ 7. Nonetheless, based on the "particular facts" of the case, the court decided the insurer was entitled to restitution. *Id.* at ¶ 8.

**{¶ 69}** The court stressed that its holding was narrow. In this regard, the court stated specifically that "where (1) an insurer does not provide a defense until after a court has

entered judgment declaring that the insurer has a duty to defend, (2) the insured demands that the insurer provide a defense, (3) the insurer provides the defense under a reservation-of-rights stating that it may seek to be reimbursed, and later (4) an appellate court determines that a duty-to-defend never existed, then (5) the insurer is entitled to be reimbursed for its defense-cost expenditures under a theory of restitution." *Id*. at ¶ 24.

**{¶ 70}** *Chiquita II* does not support finding that OTARMA was required to send reservation letters after being ordered to pay. Unlike the insurer in *Chiquita I* and *II*, OTARMA sent reservation of rights letters in 2014 and also defended Miami Township in the federal litigation for more than eight years until it received a judgment that coverage did not exist. Despite the finding of no coverage, the trial court ordered OTARMA to continue paying for the defense pending appeal, and OTARMA did so. There was no question that OTARMA maintained its position that coverage did not exist, and it did everything it could to assert its position, including attempting to vacate the stay both in the trial court and on appeal. There is no basis for concluding that OTARMA needed to send reservation of rights letters each time it paid for defense costs. Miami Township was well aware of OTARMA's position, and if OTARMA had failed to pay as ordered, it would have risked being held in contempt of court.

### 3. Right to Recoup Under the Contract

**{¶ 71}** Miami Township also contends that OTARMA has no contractual right to recoup its defense costs and that Ohio does not allow recovery under an implied contract theory where an express contract exists. Finally, the township asserts that jurisdictions outside Ohio do not let insurers recoup defense costs. In response, OTARMA makes the following points: (1) Ohio courts have the power to order restitution under the common law, as the court did in *Chiquita II;* and (2) the court had the power under R.C. 2721.09 to order

further relief, including restitution, which includes amounts that OTARMA paid but did not owe.

{¶ 72} When OTARMA requested a show cause order in the trial court, it outlined the background of the federal litigation, the prior trial and appellate rulings in the 2017 Action, and the reasons why it was entitled to reimbursement for fees it had incurred in the federal action since September 21, 2020. *See* Plaintiff OTARMA's Motion for Order to Show Cause Pursuant to R.C. 2721.09 (May 17, 2024), p. 1-21. OTARMA also filed copies of pertinent documents in the 2017 action and copies of decisions in the state appellate and federal actions and asked the trial court to take judicial notice of these matters.

{¶ 73} In responding very briefly to OTARMA's motion, Miami Township claimed that by filing under R.C. 2721.09, OTARMA was attempting to circumvent the Ohio civil rules. Specifically, among other things, the township argued that the 2017 Action did not find that OTARMA had a right to recoup its defense costs, that the township had defenses to the recoupment claim, and that the township had the right to conduct discovery and retain experts if needed. *See* Memorandum Contra to Plaintiff OTARMA's Motion for Order to Show Cause Pursuant to R.C. 2721.09 (May 31, 2024), p. 3. After OTARMA replied, the trial court held oral argument on the motion and let the parties submit post-hearing briefs. These briefs again discussed whether discovery was required and whether OTARMA had a right to recoup the fees it had paid.

{¶ 74} After the trial court granted the show cause order, the parties again offered arguments about recoupment. Thus, in the trial court, the parties amply addressed recoupment or reimbursement, which was a legal issue. Ultimately, the court filed an entry declaring that OTARMA was entitled to reimbursement of its claimed expenses as well as interest from the date it filed the current action under R. C. 2721.09. The court did not discuss

its reasons for reaching the reimbursement decision; in fact, the court's decision is only two pages long. The lack of discussion does not help appellate review.

{¶ 75} The Supreme Court of Ohio has not addressed the issue of recoupment or reimbursement in this context, and no other Ohio case has considered the right of recoupment in the same circumstances that exist here. *Chiquita II* is somewhat similar, but the court issued a narrow opinion, and the factual background differed. In a more recent decision, the First District Court of Appeals allowed an insurer to obtain restitution against its insured where it had paid out indemnity costs and its excess policy had not yet been "triggered to provide coverage," because coverage existed under an underlying primary policy. *William Powell Co. v. OneBeacon Ins. Co.*, 2020-Ohio-5325, ¶ 57 (1st Dist.).

{¶ 76} Both *Chiquita II* and *William Powell* relied on 1 Restatement of the Law 3d, Restitution and Unjust Enrichment ("RUE"), § 35 (2011), which applies generally to contracts. In *Chiquita II*, the court stated that: "Restitution is appropriate where one party to a contract demands from the other a performance that is not in fact due by the terms of that contract under circumstances where it is reasonable to accede to that demand, and where the party on whom the demand is made renders such performance under a reservation of rights, thereby preserving a claim in restitution to recover the value of the benefit conferred in excess of the recipient's contractual entitlement." *Chiquita II*, 2015-Ohio-5477, at ¶ 8, citing RUE § 35. *Accord William Powell* at ¶ 56. The insured party did not further appeal in *Chiquita II*, and the Supreme Court of Ohio did not accept an appeal in *William Powell*. *See William Powell Co. v. OneBeacon Ins. Co.*, 2021-Ohio-717. Therefore, there is no guidance from the Supreme Court of Ohio on this issue.

{¶ 77} In an earlier decision, the Sixth Circuit Court of Appeals considered how Ohio would rule when presented with an insurer's claim for reimbursement. The court predicted

Ohio would apply what was then considered the majority rule. *See United Nat. Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914 (6th Cir. 2002). In *SST Fitness*, an insurer had paid defense costs in a patent and trademark infringement case but had sent a reservation of rights to its insured before doing so. After obtaining a declaratory judgment finding it had no duty to defend, the insurer then sought reimbursement under 28 U.S.C.A. 2202, which has language similar to R.C. 2721.09. *Id*. at 916. Because the Supreme Court of Ohio had not yet ruled on the reimbursement issue, the Sixth Circuit considered " 'decisional law of the state's lower courts, restatements of law, law review commentaries, and decisions from other jurisdictions on the "majority rule" to determine what Ohio's highest court would decide if it considered the issue.' " *Id*. at 917, quoting *Grantham & Mann, Inc. v. Am. Safety Prods., Inc.*, 831 F.2d 596, 608 (6th Cir. 1987).

{¶ 78} After discussing various cases, the Sixth Circuit found that "[c]ourts in other jurisdictions . . . consistently have held that an insurer is entitled to reimbursement for defense costs when the insurer did not have a duty to defend any of the asserted claims where the insurer: 1) timely and explicitly reserves its right to recoup the costs; and 2) provides specific and adequate notice of the possibility of reimbursement." *Id*. at 919. The court then reviewed Ohio contract law and found the insurer could recover on a theory of an implied-in-fact contract, which requires the plaintiff " 'to demonstrate that the circumstances surrounding the parties' transaction make it reasonably certain that an agreement was intended.' " *Id*. at 920, quoting *Stepp v. Freeman*, 119 Ohio App.3d 68, 74 (2d Dist. 1997).

{¶ 79} The Sixth Circuit's decision to allow recovery was based on the fact that the insurer provided a reservation of rights and the insured had accepted the defense. In particular, the court rejected the insured's claim that an implied-in-fact contract could not exist because the insurer was not allowed to modify the original contract and had not

provided new consideration. The court found that "United National did not, however, modify the original insurance contract; instead, the parties entered into a new agreement in which United National offered defense costs subject to potential reimbursement and SST accepted that offer by accepting the defense costs." *SST Fitness*, 309 F.3d at 920.

**{¶ 80}** Miami Township argues that *Chiquita II, William Powell*, and *SST Fitness* do not apply here because in those cases, the insurer was found never to have had a duty to defend. In contrast, OTARMA had a duty to defend until September 21, 2020. Appellants' Brief at p. 13-15. In addition, the township contends that many jurisdictions nationwide do not let insurers recoup defense costs absent a policy provision allowing reimbursement. This is because insurers have a broad duty to defend. *Id*. at p. 15-16.

**{¶ 81}** The leading case for the "majority" view is *Buss v. Superior Court*, 16 Cal.4th 35 (1997). There, the insured was sued on 27 counts, but the insurer believed only one (a defamation claim) was potentially covered. When agreeing to defend, the insurer reserved its rights, including the right to obtain reimbursement and/or the ability to obtain allocation of attorney fees and costs if a decision was made that coverage did not exist. *Id*. at 41-42. The insurer and insured also entered into an agreement (with consideration) for the insured to reimburse the insurer pro rata for costs if a court decided costs should be shared pro rata. *Id*. at 42. After the insurer had paid more than a million dollars in fees and costs, the insured settled the case and brought an action against the insurer for contribution toward the settlement; the insurer cross-claimed for reimbursement and a declaration that it did not have to contribute to the settlement. *Id*. at 42-43.

**{¶ 82}** Ultimately, the case reached the Supreme Court of California. After reciting general principles about duties to defend and indemnify, the court remarked that in a "mixed" action, in which some claims are at least potentially covered and others are not, "the insurer

has a duty to defend as to the claims that are at least potentially covered, having been paid premiums by the insured therefor, but does not have a duty to defend as to those that are not, having not been paid therefor." *Id*. at 47-48.

{¶ 83} The court further noted that while it had "nevertheless held that, in a 'mixed' action, the insurer has a duty to defend the action in its entirety," it could not "justify the insurer's duty to defend the entire 'mixed' action contractually, as an obligation arising out of the policy, and [the court itself had] never even attempted to do so." (Citations omitted.) *Id*. at 48. This was based on the fact that "the duty to defend goes to any action seeking damages for any covered claim. If it went to an action *simpliciter*, it could perhaps be taken to reach the action *in its entirety*. But it does not. Rather, it goes to an action seeking *damages for a covered claim*. It must therefore be read to embrace the action to the extent that *it seeks such damages*." (Emphasis in original.) *Id*.

{¶ 84} The court then concluded that insurers could not seek reimbursement for potentially covered claims because they were bargained for under the policy. However, insurers could seek reimbursement for claims that were not covered because "the insurer has not been paid premiums by the insured. It did not bargain to bear these costs. To attempt to shift them would not upset the arrangement." *Id*. at 50-51. In the latter situation, the court stressed that:

> The insurer therefore has a right of reimbursement that is implied in law as quasi-contractual, whether or not it has one that is implied in fact in the policy as contractual. As stated, under the law of restitution such a right runs against the person who benefits from "unjust enrichment" and in favor of the person who suffers loss thereby. The "enrichment" of the insured by the insurer through the insurer's bearing of unbargained-for defense costs is inconsistent

with the insurer's freedom under the policy and therefore must be deemed "unjust." It is like the case of A and B. A has a contractual duty to pay B $50. He has only a $100 bill. He may be held to have a prophylactic duty to tender the note. But he surely has a right, implied in law if not in fact, to get back $50. Even if the policy's language were unclear, the hypothetical insured could not have an objectively reasonable expectation that it was entitled to what would in fact be a windfall.

(Footnote and citations omitted.) *Buss*, 16 Cal.4th at 51.

{¶ 85} Courts have also reasoned that "[a] cause of action for reimbursement is cognizable to the extent required to ensure that the insured not reap a benefit for which it has not paid and thus be unjustly enriched. Where the insurer defends the insured against an action that includes claims not even potentially covered by the insurance policy, a court will order reimbursement for the cost of defending the uncovered claims in order to prevent the insured from receiving a windfall." *Hartford v. Lumbermens Mut. Cas. Co.*, 264 Conn. 688, 717-718 (2003) (after discussing *Buss*). *See also Hebela v. Healthcare Ins. Co.*, 370 N.J.Super. 260, 278-279 (2004) (where "an insurer, having honored its duty to defend, sought reimbursement from an insured for those fees incurred in defending uncovered claims, . . . the right of reimbursement exists because the insured would be unjustly enriched in benefiting by, without paying for, the defense of a non-covered claim").

{¶ 86} In the context of the majority approach, "if defense costs are readily apportionable between the covered and the uncovered claims, the insurance company need pay only for the former." *Lockwood Internatl., B.V. v. Volm Bag Co., Inc.*, 273 F.3d 741, 743 (7th Cir. 2001), citing *Buss*, 16 Cal.4th 35.

{¶ 87} An example of what has been classified as the "minority view" can be found in

*Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 606 Pa. 584 (2010). In that case, four insurers (collectively "Royal") provided commercial liability insurance for a firearm wholesaler-distributor and its subsidiaries. Royal's policy did not include a provision for reimbursement for claims that were found not to be covered. However, Royal did, upon assuming the defense, provide the insured with a reservation of rights " 'to seek reimbursement for any and all defense costs ultimately determined not to be covered.' " *Id*. at 589-590 and 591-592. A few months later, the insurer filed a declaratory judgment action seeking a decision on the duty to defend and indemnify and also seeking reimbursement for defense expenses. *Id*.

{¶ 88} Subsequently, the trial court found no duty to defend, which was affirmed on appeal. The insurer then sought reimbursement of fees and was awarded more than $300,000 based on an unjust enrichment theory. However, the Superior Court disagreed with the award, noting "a split in jurisdictions between the 'majority view,' those courts that have found a right of reimbursement based on a reservation of rights letter, *e.g., Buss* . . . , and the 'minority view,' which includes those courts that have found no such right to reimbursement absent an express provision allowing reimbursement in the written insurance contract." *Id*. at 594, citing *Terra Nova Ins. Co. Ltd. v. 900 Bar, Inc.*, 887 F.2d 1213 (3d Cir. 1989). (Other citation omitted.) "Considering these two approaches, the Superior Court was more persuaded by the *Terra Nova* line of cases. Consistent with *Terra Nova*, the Superior Court accepted the insured's argument that allowing reimbursement pursuant to Royal's reservation of rights letters amounted to an impermissible, unilateral modification of the written insurance contract." *Id*. On further appeal, the Pennsylvania Supreme Court affirmed the superior court.

{¶ 89} During its discussion, the Pennsylvania Supreme Court noted that "[a]fter

*Buss*, insurers repeatedly acted to reserve a right to reimbursement of defense costs, and many courts ruled in the insurer's favor, usually based on contractual and/or equitable principles. Primarily, most courts of this view determined that the insurance policy is inapplicable because the claim for which defense is provided is not covered, and the reservation of rights letter was an offer to create a new contract with regard to non-covered claims that the insured accepted when it accepted the insurer's payment of defense costs." (Footnote and citations omitted.) *Jerry's Sport* at 604. The court further remarked that "courts following *Buss* and its rationale apply the equitable theory of unjust enrichment and the remedy of restitution in quantum meruit, expressing an interest in disallowing the insured from being unjustly enriched when the insurer paid defense costs for non-covered claims." (Citations omitted.) *Id*. at 604-605.

**{¶ 90}** On the other hand, some courts had refused to follow *Buss* and rejected reimbursement for non-covered claims because that "is inconsistent with the broad duty to defend." (Citations omitted.) *Id*. at 605. In addition, some courts had "rejected *Buss* by finding that a unilateral reservation of rights letter cannot create rights not contained in the insurance policy itself." (Citations omitted.) *Id*. at 606. As a final matter, courts had rejected *Buss* by finding that concerns of equity and fairness weigh against reimbursement, because an insurer benefits unfairly if it can hedge on its defense obligations by reserving its right to reimbursement while potentially controlling the defense and avoiding a bad faith claim." *Id*., citing *Shoshone First Bank v. Pacific Employers Ins. Co*., 2 P.3d 510 (Wyo. 2000). (Other citation omitted.)

**{¶ 91}** After considering these matters, the Pennsylvania Supreme Court found that the minority view was more consistent with Pennsylvania's broad duty to defend, which even extended to "actions that are 'groundless, false, or fraudulent' as long as there exists the

possibility that the allegations implicate coverage." *Jerry's Sports*, 606 Pa. at 608 and 610, citing *Gedeon v. State Farm Mut. Auto. Ins. Co.*, 410 Pa. 55, 58 (1963). (Other citation omitted.)

{¶ 92} As a further matter, the court found that insurers decide in the first instance whether they should provide coverage based on the complaint. *Id*. at 610. The role of courts in declaratory judgment actions "is to resolve the question of coverage to eliminate uncertainty. If the insurer is successful in the declaratory judgment action, it is relieved of the continuing obligation to defend." *Id*. at 611. "The court's resolution of the question of coverage does not, however, retroactively eliminate the insurer's duty to defend the insured during the period of uncertainty." *Id*., citing *Liberty Mut. Ins. Co. v. FAG Bearings Corp*., 153 F.3d 919, 924 (8th Cir. 1998).

{¶ 93} As indicated, in both *Chiquita II* and *William Powell*, the First District relied on ¶ 35 of the RUE, which was effective in 2011. *Chiquita II*, 2015-Ohio-5477, at ¶ 8; *William Powell*, 2021-Ohio-717, at ¶ 56. *See also Natl. Sur. Corp. v. Immunex Corp*., 176 Wash.2d 872, 896 (2013) (Wiggins, J., dissenting). In the latter case, the majority opinion held that "insurers may not seek to recoup defense costs incurred under a reservation of rights defense while the insurer's duty to defend is uncertain." *Id*. at 887.

{¶ 94} However, the dissent in *Immunex* rejected the majority's holding that "insurers who defend under a reservation of rights may never recoup defense costs after a court determines that an insurance policy does not cover an insured's claim and that the insurer never had a duty to defend." *Id*. at 892-892. The dissent remarked that the majority of courts had held otherwise and that § 35 of the 2011 RUE had also endorsed the idea of restitution. *Id*. at 892-893. In this regard, the dissent stressed that the Reporter's Note on cmt. c. to § 35 indicated that "this scenario is 'based on' *Buss* and other similar cases," and the Note had

concluded that " '[r]estitution then permits the insurer to recover that part of the benefit conferred on the policyholder that exceeds the insurer's obligation' ").

{¶ 95} We should note that in our research, many decisions on the subject are close. For example, in *Immunex*, five members of the court were in the majority; four members dissented.

{¶ 96} While *Buss* was once the majority approach, the *Immunex* majority observed in 2013 that "[m]ore recently, however, courts deciding in the first instance whether insurers can recover defense costs have generally concluded that they cannot." *Immunex* at 883. Consistent with the majority's comment, as of 2025, "pro- and anti-recoupment decisions appear to be more or less in balance." (Footnote omitted.) *Richmond, On & Off the Buss: Insurer Recoupment of Defense Costs Today*, 59 Tort Trial & Ins. Prac. L.J. 361, 391 (2025).

{¶ 97} Part of the reason for this is the 2019 promulgation of the American Law Institute's Restatement of the Law, Liability Insurance (RLLI), which "was marked by more pronounced controversy than that usually attending Restatements. Among the provisions attracting criticism from insurers was RLLI § 21, which states: 'Unless otherwise stated in the insurance policy or otherwise agreed to by the insured, an insurer may not obtain recoupment of defense costs from the insured, even when it is subsequently determined that the insurer did not have a duty to defend or pay defense costs.' " (Footnotes omitted.) Stempel, *A Deeper Dive into Nautilus: Differentiating Insurer Efforts to Recover Defense Costs & Assessing Recoupment in the Wake of the Ali Restatement*, 57 Tort Trial & Ins. Prac. L.J. 57, 58 (2022).

{¶ 98} "*Nautilus*" refers to *Nautilus Ins. Co. v. Access Med., LLC*, 137 Nev. 96 (2021). In a four-to-three decision, the court there held that where a duty to defend is never triggered, the insurance contract does not apply, and recovery under a restitution theory is not barred.

*Id*. at 100. The *Nautilus* majority applied RUE § 35 and the California majority rule and rejected RLLI § 21. Its basis for doing so was that "the Restatement of Liability Insurance justifies its departure from the usual rule by reference to 'special considerations of insurance law' that make insurance policies fundamentally different from other contracts." *Id*. at 103, fn. 7, citing § 21, cmt. b. The majority stressed that this "reasoning is inconsistent with our precedent that 'legal principles applicable to contracts generally are applicable to insurance policies.' " *Id*., quoting *Century Sur. Co. v. Andrew*, 134 Nev. 819, 821 (2018).

{¶ 99} The dissent cited § 21 in support of the claim that "the default rule should be that an insurer should not be entitled to reimbursement of defense costs under these circumstances unless such recoupment is explicitly provided for in the insurance policy." *Id*. at 111-112 and fn. 8 (Cadish, J., dissenting). Again, this was a close decision.

{¶ 100} According to Stempel, "[a]ny inconsistency between RLLI § 21 and R3RUE § 35 did not result from inadvertence or oversight. To the contrary, insurers opposing RLLI § 21 argued that it was inconsistent with Restitution Restatement § 35 and that the RLLI should yield to the R3RUE on this issue. The drafters of the RLLI, who were of course much more focused on insurance than were the drafters of the R3RUE, rejected this view as did the ALI as a whole." 57 Tort Trial & Ins. Prac. L.J. at 96. Stempel further observed that "[b]ecause the typical general liability insurance policy does not provide for insurer recoupment of defense expenditures in connection with claims eventually deemed outside potential coverage, this provision effectively means that insurers using standard forms are precluded from seeking reimbursement of defense costs under the RLLI approach. Insurers of course are free to include such language in the policies that they draft but have consistently declined to do so despite being well aware of the issue." *Id*.

{¶ 101} Both the Stemper and Richmond articles mention common situations

involving reimbursement. The strongest case, even in jurisdictions inclined to side with an insured on this issue, is where a policy has an express provision for reimbursement. Richmond, 59 Tort Trial & Ins. Prac. L.J. 361, 384 and fn.171; Stemper, 57 Tort Trial & Ins. Prac. L.J. at 64. Absent an express provision, "the next strongest case for recognizing such a right is one where the insurer never had a duty to defend in the first place. In that instance, the insurer incurred defense costs without any legal obligation to do so." Richmond at 387.

{¶ 102} "Third, mixed actions present insurers with their weakest argument for recoupment. This is first because of the 'entire suit' rule," also known as the 'in for one, in for all' rule, the 'mixed-action rule,' and the 'complete defense rule.' This rule holds that an insurer asked to defend a mixed action generally must defend the insured against *all* claims alleged in the lawsuit, including those that are not covered, so long as the insurer has an arguable duty to indemnify the insured on even one of the claims." (Footnotes omitted; emphasis in original.) *Id*. at 388-389.

{¶ 103} However, "the entire-suit rule is not necessarily dispositive insofar as an insurer's right to recoupment is concerned, as the California Supreme Court outlined in *Buss v. Superior Court*. . . . Under *Buss*, the entire-suit rule governs the scope of the duty to defend, but it does not govern the allocation of defense costs. The fact that an insurer must defend a mixed action in its entirety for practical reasons does not prevent the insurer from later seeking reimbursement of defense costs that it never bargained to bear." (Footnotes omitted.) *Id*. at 389.

{¶ 104} Again, the Supreme Court of Ohio has not taken a position on this point. As a general rule, the court "has consistently held that insurance contracts must be construed in accordance with the same rules as other written contracts." *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St.3d 657, 665 (1992). *Accord Grange Mut. Ins. Co. v. Patino*, 2020-

Ohio-466, ¶ 31 (10th Dist.). Regarding the duty to defend, the principles Ohio follows may be summarized as follows:

> An insurer's duty to defend is broader than and distinct from its duty to indemnify. . . . An insurer has an absolute duty to defend an action when the complaint contains an allegation in any one of its claims that could arguably be covered by the insurance policy, even in part and even if the allegations are groundless, false, or fraudulent. . . . Once an insurer must defend one claim within a complaint, it must defend the insured on all the other claims within the complaint, even if they bear no relation to the insurance-policy coverage. . . . An insurer need not defend any action or any claims within the complaint when all the claims are clearly and indisputably outside of the contracted policy coverage. . . . The duty to defend is further heightened when the insurer expressly states that it will defend claims that are groundless, false, or fraudulent. . . . The duty to defend an action is not determined by the action's ultimate outcome or the insurer's ultimate liability.

(Citations omitted.) *Sharonville v. Am. Employers Ins*. Co., 2006-Ohio-2180, ¶ 13.

{¶ 105} Furthermore, "[a]n insurance company, which by contract is obligated to defend its insured in a negligence action, may defend in good faith without waiving its right to assert at a later time the policy defenses it believes it has, provided that it gives its insured notice of any reservation of rights*." Motorists Mut. Ins. Co. v. Trainor*, 33 Ohio St.2d 41 (1973), paragraph one of the syllabus. "A bilateral nonwaiver agreement disclaims liability under the terms of the policy, reserves to each party his respective rights, and provides that the insurer will defend the suit at its own expense, and that nothing which is done under the agreement will be deemed to constitute a waiver of his respective rights. A unilateral

reservation of rights is a notice given by the insurer that it will defend the suit, but reserves all rights it has based on noncoverage under the policy." *Id*. at 45.

{¶ 106} As noted, under the LDCPA and GLC, OTARMA agreed to defend claims that were groundless, false, or fraudulent, which raised a heightened duty to defend. However, under Ohio law, OTARMA was also permitted to reserve its rights based on noncoverage under the policy. OTARMA did reserve its rights and did defend Miami Township for almost a decade, i.e., from at least early 2014 until December 4, 2023, when the trial court in the 2017 action finally lifted the stay that required OTARMA to keep paying for the cost of defending the township.

{¶ 107} Good arguments exist for both the minority and majority positions. However, based on the decisions by the First District, the choice of the Supreme Court of Ohio not to accept an appeal in *William Powell*, and the long-standing view of the Sixth Circuit, we believe Ohio would follow the majority approach. More importantly, under the circumstances present here, which are quite unique, we feel that restitution is an appropriate remedy.

{¶ 108} Even in jurisdictions that decline to allow reimbursement, courts have held that "[i]f the insurer is successful in the declaratory judgment action, it is relieved of the continuing obligation to defend." *Jerry's Sport*, 606 Pa. at 611. Ohio also follows the rule that an insurer is absolved of a duty to defend once a determination is made that no possibility of coverage exists under the policy. *Blue Water Condominium Assn., Inc. v. Motorists Mut. Ins*. Co., 2025-Ohio-772, ¶ 47 (6th Dist.), citing *Helman v. Hartford Fire Ins. Co.*, 105 Ohio App.3d 617, 625 (9th Dist. 1995). *See also City of Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 179 (1984). Here, that decision first occurred on July 29, 2022, when the trial court found that no coverage existed under OTARMA's policies. The fact that we found in March 2023 that no coverage existed for eight of the nine claims in the federal action and

that potential or arguable coverage for the remaining claim ended on September 21, 2020, meant that coverage no longer existed even before the trial court issued its July 29, 2022 decision.

{¶ 109} This is also a point that OTARMA makes in its brief, i.e., that our opinion in "*OTARMA I* established that OTARMA never owed the amounts it was judicially compelled to pay while *OTARMA I* was on appeal." Appellee's Brief, p. 4, fn. 11. We agree. Those conclusions have been litigated and are not subject to further dispute. Despite the lack of coverage after September 21, 2020, OTARMA was required to continue funding the defense until the trial court in the 2017 Action vacated the stay in December 2023.

{¶ 110} Under § 35(1) of the RUE: "If one party to a contract demands from the other a performance that is not in fact due by the terms of their agreement, under circumstances making it reasonable to accede to the demand rather than to insist on an immediate test of the disputed obligation, the party on whom the demand is made may render such performance under protest or with reservation of rights, preserving a claim in restitution to recover the value of the benefit conferred in excess of the recipient's contractual entitlement." "Restitution under these circumstances does not require that the contract be set aside; rather, it is a means to enforce adherence to a contract through ordering repayment of a sum to which the recipient was never entitled under the contract's terms." *Chiquita II*, 2015-Ohio-5477, at ¶ 8, citing § 35, comment a.

{¶ 111} In its brief, Miami Township has distinguished *Chiquita II* and *SST Fitness Corp.*, 309 F.3d 914, by arguing that "[r]estitution, by its very nature does not apply to defense costs paid pursuant to court order." Appellants' Brief at p. 14. However, that is exactly what happened in *Chiquita II*. According to the declaratory judgment complaint Chiquita filed in September 2008, several federal court actions had been brought against it

in 2007 and 2008. Up to the time the declaratory judgment was filed, none of the three insurers involved had paid any defense costs, despite having been given timely notice of the claims against Chiquita. At that point, defense costs had already exceeded $1,000,000. *See Chiquita Brands Internatl., Inc. v. Fed. Ins. Co.*, Hamilton C.P. No. A0808934, 2008 WL 11257458 (Sept. 23, 2008), Complaint for Declaratory Judgment, ¶ 3-5 and 12-24.

{¶ 112} After one of the three insurers filed a third-party complaint against National Union in December 2008, National Union entered the action and filed a declaratory judgment action against Chiquita. *See Chiquita Brands Internal., Inc. v. Fed. Ins. Co.*, Hamilton C.P. No. A0808934, 2009 WL 10643384 (Jan. 15, 2009), Answer and Affirmative Defenses to the Third-Party Complaint, Claim for Declaratory Judgment and Counterclaim, ¶ 27-101. Eventually, National Union settled with the other insurers, and the trial court granted summary judgment in January 2010 on the coverage issue, finding National Union had a duty to defend. After the court held a bench trial on the amount of defense costs, National Union appealed. The date of the bench trial was not mentioned, but the final appealable order was entered in December 2011. See *Chiquita I,* 2013-Ohio-759, at ¶ 4-5, and *Chiquita II*, 2015-Ohio-5477, at ¶ 2.

{¶ 113} When the trial court found no coverage, National Union began paying defense costs in January 2010 and ended up paying around $11,000,000. *See Chiquita Brands Internal., Inc. v. Nat. Union Fire Ins. Co. of Pittsburgh, PA*, Hamilton C.P. No. A0808934, 2014 WL 11512566, *4 (June 11, 2014). The First District's decision finding no coverage was not filed until March 2013, meaning fees were paid for a significant period of time. The trial court then awarded National Union $11,744.014.87, prejudgment interest from the date of each payment up to the day before the court's decision ($1,247,042.79), and post-judgment interest. *Chiquita Brands Internatl., Inc. v. Nat. Union Fire Ins. Co. of*

*Pittsburgh, PA.*, Hamilton C.P. No. A0808934, 2014 WL 12493210, *1 (July 24, 2014). As indicated, the First District affirmed the trial court based on a theory of restitution. Consequently, the insurer in Chiquita did pay fees pursuant to court order.

{¶ 114} Miami Township has also argued that restitution is inapplicable because "the vast majority of defense costs paid by OTARMA were not in response to a demand made by Miami Township. Rather, this Court ordered OTARMA to pay the costs." Appellants' Brief at p. 13. Chiquita also made this argument in *Chiquita II*. The First District's response to that point is relevant. In this regard, the court stated that:

The next issues we address are whether Chiquita demanded performance under the policies, and whether it was reasonable for National Union to accede to Chiquita's demand under the circumstances.

The record indicates that Chiquita submitted invoices to National Union for defense-cost payments. And email communications between the parties demonstrate that Chiquita expected National Union to fund the underlying lawsuits after the trial court had issued its declaratory-judgment order. We therefore find that Chiquita demanded performance under the policies. And in light of the trial court's order, it was reasonable for National Union to accede to Chiquita's demand for payment. Chiquita argues that National Union could have refused to pay because (1) the court's order was interlocutory and was not binding, and (2) the court's order did not require National Union to pay defense costs but merely set forth National Union's obligations under the policies. *The practical reality, however, is that National Union had little choice but to begin funding Chiquita's defense until the court's order became final and National Union was able to appeal it. Refusing to fund the defense could have*

*subjected National Union to a claim of bad faith, as well as prejudiced it in the*

*underlying litigation. See* Restatement Section 35, comment a (stating that

when the cost of resisting an unjustified demand poses a risk of further loss or

liability beyond the amount already in controversy, the party on whom the

demand is made may have no practical alternative but to submit). Therefore,

we find that submitting to Chiquita's demands under these circumstances was

reasonable.

(Emphasis added.) *Chiquita II*, 2015-Ohio-5477, at ¶ 14-15.

{¶ 115} As noted, the situation before us is quite unique. In the first place, OTARMA filed the declaratory judgment action in 2017 and was not able to obtain a ruling from the trial court until almost five years had passed. OTARMA tried on numerous occasions to obtain relief, but the court rejected its attempts. When OTARMA again asked in late 2019 for some resolution and complained about the lack of a remedy, the trial court's response in early April 2020 was that if the court decided OTARMA had no duty to defend, OTARMA would be entitled to reimbursement of expenditures for the defense. The court, therefore, retained the stay it had previously entered in July 2019. This persisted until the court eventually granted summary judgment to OTARMA in late July 2022 – three years after it entered the original stay. The summary judgment was interlocutory until the court entered Civ.R. 54(B) certifications in early August 2022.

{¶ 116} Shortly after that, Miami Township (the party that would be appealing) asked the court for a stay of execution, based on the fact that the trial in the federal case had been pending for years and OTARMA would no longer fund the defense. However, the township never mentioned (and the trial court never considered) whether the township had funds to keep retaining the counsel that OTARMA had funded for many years. Notably, in asking the

court to forego a bond, the township stressed that, because it had ties to the community and was financially solvent, OTARMA's interests would be protected. Defendants' Motion to Stay Enforcement of Declaratory Judgment Pending Appeal (Aug. 26, 2022), p. 5. Again, when the trial court granted the stay of execution, it also ordered OTARMA to continue funding the defense of the *Gillispie* litigation. When OTARMA sought to vacate the stay during the appeal in *OTARMA I*, Miami Township again did not claim that it could not pay to continue with its counsel, and we did not consider it. We simply weighed the equities and commented on the fact that the township "may" lose its legal representation three weeks before trial. Appeals Stay Order at p. 6.

{¶ 117} Consistent with *Chiquita II*, Miami Township's actions in applying for a stay and seeking to have OTARMA continue to pay for the defense was a demand for performance under the policy, and OTARMA's choice to comply with the court's order rather than risk contempt of court or a bad faith action was reasonable. We have already discussed OTARMA's reservation of rights and assertion of its right to seek reimbursement and need not mention those points further.

{¶ 118} One argument that Miami Township makes is that this case differs from *Chiquita II* because the insurer there was ultimately found to have no duty to defend, whereas our holding in *OTARMA I* was that a duty to defend existed until September 21, 2020. However, in our view, the equities here weigh even more heavily in OTARMA's favor. In *Chiquita*, the insurer refused to pay any defense expenses until it was ordered to do so, whereas OTARMA provided a defense for many years before it was ordered to continue paying even though it had prevailed on the coverage issue.

{¶ 119} *Chiquita II* is also distinguishable on some points, and we therefore do not need to follow the First District's recitation about its "narrow holding," which was tailored to

the "particular facts" of that case. *Chiquita II*, 2015-Ohio-5477, at ¶ 24. The case before us also has "particular" and "unique" facts that warrant restitution. While the facts differ somewhat, that does not make restitution inappropriate in either case. We could also have relied on the theory that a new contract was formed when OTARMA sent its reservation of rights including a claim for reimbursement, and Miami Township accepted the defense. This would have been consistent with the decision in *SST Fitness*, 309 F.3d at 920.

{¶ 120} As a final matter, other circumstances here distinguish the case before us and support restitution. In the first place, OTARMA's policies were issued before the 1997 decision in *Buss*, and including express recoupment provisions in policies does not appear to have been a particular issue. In fact, *Buss* itself did not require that as a predicate for reimbursement. Second, imposing such a requirement nearly 30 years after OTARMA's policies were issued to Miami Township would be inequitable. The same point also applies to RLLI § 21, which was only recently adopted. Furthermore, denying recovery would render the declaratory judgment process futile, due to the delay in resolving the 2017 Action and the requirement to continue funding after coverage ceased to exist. Finally, the attorney fees and costs can be easily determined, i.e., they are limited only to a time when no coverage existed under the policy (after September 21, 2020). OTARMA is not asking to be reimbursed for the period when coverage was potentially arguable (although barely so), and those costs must have been considerable. Instead, OTARMA only seeks to recover costs for the time after it no longer had a duty to defend. Accordingly, the trial court did not err in finding that OTARMA was entitled to reimbursement.

## F. Effect of Two Inconsistent Orders

{¶ 121} The remaining issue relates to the township's claim that the trial court erred in "issuing two irreconcilably contradictory orders." Appellants' Brief at p. 8. This concerns

the fact that on December 16, 2024, the trial court simultaneously entered two orders: one granted the relief that OTARMA sought, and the other, concerning the show cause order, stated that "Defendants have shown cause for the reasons stated in their Brief in Response to the Court's October 10, 2024 Show Cause Order." Entry and Order Finding That Defendants Have Shown Cause Pursuant to the Court's October 10, 2024 Order (Dec. 16, 2024), p. 1.

{¶ 122} However, we lack jurisdiction to consider the latter entry because no Civ.R. 54(B) certification was made. As a result, the entry was interlocutory only. *See Trotwood v. S. Cent. Constr., L.L.C.*, 2011-Ohio-237, ¶ 57-59 (2d Dist.). *Trotwood* involved a comparable situation, and we found that we lacked jurisdiction over a second trial court order because the action had not been terminated as to all parties and no Civ.R. 54(B) certification existed for the second order. *Id.* In the case before us, the township's amended third-party complaint against First Mercury Syndicate, Inc. remains pending, and the entry in question lacks a Civ.R. 54(B) certification.

{¶ 123} As we noted earlier, the trial court's final judgment entry entered on January 14, 2025, which provided a Civ.R. 54(B) certification, refers only to the entry granting relief to OTARMA. *See* Final Judgment at p. 1. Miami Township's notice of appeal also refers only to the entry granting relief to OTARMA. The township also attached only that particular entry to the notice of appeal.

{¶ 124} Accordingly, and for the reasons stated, we lack jurisdiction over the issue that Miami Township raises. In any event, this case is being reversed in part and remanded for an attorney fee hearing. Consequently, the trial court can, on remand, correct what was clearly a clerical error.

{¶ 125} Based on the preceding discussion, Miami Township's single assignment of

error is sustained in part and is overruled in part. This matter will be remanded solely for a hearing on whether OTARMA's claimed attorney fees and costs were necessary and reasonable.

## III. Conclusion

{¶ 126} Miami Township's sole assignment of error having been sustained in part and overruled in part, the judgment of the trial court is affirmed in part and reversed in part. This matter is remanded solely for a hearing on attorney fees and costs.

. . . . . . . . . . . . .

EPLEY, P.J. and HUFFMAN, J., concur.